

BRITISH
COLUMBIA

February 19, 2015


Re:     Jason Boyachek
**Recognizance of Bail Order #25649**
**Vancouver Appeal Court**

Mr Boyachek has been reporting weekly, in person, to a Bail Supervisor at Cranbrook
Community Corrections since October 3, 2011.
He has reported consistently as directed, signing in every week.
Mr. Boyachek has not incurred any breaches and there are no issues around compliance to the
conditions on his order.

There are, and have been, no supervision concerns in regards to Jason Boyachek from October 3,
2011 to this date, February 19, 2015.

If you have any questions or concerns please contact the writer at the number indicated below.


Emily Boekelheide
Bail Supervisor
Cranbrook Community Corrections
250-426-1210


DETENTION HEARING
Exhibit  A

| **Ministry of** | **Corrections Branch** | **Mailing Address:** | **Location Address:** |
| **Public Safety and** | Community Corrections and | Cranbrook Community Corrections | #101, 117 – 10ᵗʰ Avenue South |
| **Solicitor General** | Corporate Programs Division | # 101, 117 – 10ᵗʰ Avenue South | Cranbrook, BC  V1C 2N1 |
| | | Cranbrook, BC  V1C 2N1 | |

Telephone:  (250) 426-1210
Toll Free:  1-866-800-5522
Facsimile:  (250) 426-1602

File Number 36178
Court of Appeal File No. CA 041165

## IN THE SUPREME COURT OF CANADA

### (ON APPEAL FROM BRITISH COLUMBIA COURT OF APPEAL)

BETWEEN:

**Jason Boyachek**

Applicant
*(Appellant)*

AND:

**Canada (The Minister of Justice)**

Respondent
*(Respondent)*

### NOTICE OF DISCONTINUANCE

*Pursuant to Rule 93*

I hereby give notice that I, Jason Boyachek, wish to discontinue the appeal of my committal for extradition.

Dated at Vancouver, British Columbia this 5th day of March, 2015.

Jason Boyachek, Applicant

This notice was signed in the presence of:

Counsel for the Applicant
Gary Botting, Barrister
1088 Grover Avenue
Coquitlam, B.C. V3J 3G1

To the Respondent (Fax: 604-666-1585)
To the Registrar (Fax: 613-996-9138)
To: Minister of Justice: (Fax: 613-957-8412)

SERVICE OF A TRUE COPY
HEREOF ADMITTED

MAR 0 5 2015

WILLIAM F. PENTNEY /c₂
Solicitor for
A.G.C.

DETENTION HEARING
Exhibit B

Court of Appeal File No. CA41165
Lower Court File No. 25649
Police File #2011-39939 Burnaby
EXTRADITION
DOB: June 4, 1973



COURT OF APPEAL

FORM 32

# RECOGNIZANCE OF BAIL

## CANADA:  PROVINCE OF BRITISH COLUMBIA

Be it remembered that on this day the persons named in the following schedule personally came before me and severally acknowledged themselves to owe to Her Majesty the Queen the several amounts set opposite their respective names, namely,

| Name | Address | Amount |
|---|---|---|
| Jason Boyachek | ███████████████ | $450,000.00 (w/deposit) |
| Tara Boyachek | ███████████████ | 1 or more sureties in the amount of $450 000.00 |
| Danny Drouin | ███████████████ | |
| Janice M. Boyachek | ███████████████ | |

to be made and levied of their several goods and chattels, lands and tenements, respectively, to the use of Her Majesty the Queen, if the said Jason Boyachek fails in any of the conditions hereunder written.

Taken and acknowledged before me on the        day of January, A.D. 2015, at Cranbrook, British Columbia.

_____        Jan. 30/15        _____
(Signature of Applicant)            Date                    K. GREGORY
                                                    (A Justice of the Peace in and for
                                                    the Province of British Columbia)

DETENTION HEARING
Exhibit C

RECOGNIZANCE Page 1 of 4

Court of Appeal File No. CA41165
Lower Court File No. 25649
Police File #2011-39939 Burnaby
EXTRADITION
DOB: June 4, 1973

Taken and acknowledged before me on the     day of January, A.D. 2015, at
Cranbrook, British Columbia.

_____    Jan. 30 , 2015        _____ K. GREGORY
(Signature of surety)              Date            (A Justice of the Peace in and for
                                                   the Province of British Columbia)

Taken and acknowledged before me on the     day of January, A.D. 2015, at
Cranbrook, British Columbia.

_____    Jan. 30, 2015        _____
(Signature of surety)              Date            (A Justice of the Peace in and for
                                                   the Province of British Columbia)

Taken and acknowledged before me on the     day of January, A.D. 2015, at
Cranbrook, British Columbia.

_____    Jan. 30, 2015        _____ K. GREGORY
(Signature of surety)              Date            (A Justice of the Peace in and for
                                                   the Province of British Columbia)

Whereas the said Jason Boyachek, herein after called the Applicant, is an
Applicant against his extradition proceeding in respect of the following
charge:

> Conspiracy to traffic in a substance included in
> Schedule 2 of the CDSA contrary to s.5 of the CDSA and
> CC s.465 and Conspiracy to possess property obtained by
> crime contrary to CC s.354 and CC s.465

Now, therefore, the conditions of this recognizance are that if the
Applicant attends as required by the Court in order to be dealt with
according to law;

And further, if the Applicant

SEE THE FOLLOWING PAGE FOR CONDITIONS

Court of Appeal File No. CA41165
Lower Court File No. 25649
Police File #2011-39939 Burnaby
EXTRADITION
DOB: June 4, 1973

## CONDITIONS OF RECOGNIZANCE

(a) The Applicant shall keep the peace and be of good behaviour.

(b) The Applicant shall report within 72 hours of his release to the bail supervisor located at 275 East Cordova Street, Vancouver, B.C. and thereafter shall report to the bail supervisor, as directed, but not less than once per week in person.

(c) The Applicant shall reside with Janice Boyachek at ███████████ ██████████████ (the "Residence") and not to change his address without the further order of the Court.

(d) The Applicant shall not be outside the Residence between the hours of 11:00 p.m. and 7:00 a.m. at any time except for attendances related to medical emergencies. The Applicant may be outside the Residence between the hours of 11:00 p.m. and 7:00 a.m. with the prior written permission of the bail supervisor, which he must carry a copy with him at all times while outside his Residence during these hours and be able to present it to a peace officer, upon demand, to determine his compliance with the terms of his release.

(e) The Applicant shall remain within the Province of British Columbia.

(f) The Applicant shall provide access to and present himself at the front door of the Residence, upon demand by a peace officer, to determine his compliance with the terms of his release.

(g) The Applicant shall carry a copy of his recognizance with him at all times while outside his Residence and be able to present it to a peace officer, upon demand, to determine his compliance with the terms of his release.

(h) The Applicant shall not possess or apply for any passports or other travel documents.

(i) The Applicant shall not have contact, directly or indirectly, with David Anthony Downing, Jeffrey Kopp, Michael Breneman, Azar Niekamp, Daniel Berger, Graham Jarman, Juliana Steernberg or Jana Wiltsey, except through counsel for the purposes of preparing his legal case for extradition.

(j) The Applicant shall not to possess any firearms or other weapons as defined by the Criminal Code of Canada.

(k) The Applicant shall provide the bail supervisor with all telephone and cellular numbers he regularly uses and will be available to be contacted by either telephone or cellular numbers to confirm compliance with the conditions of his release.

Court of Appeal File No. CA41165
Lower Court File No. 25649
Police File #2011-39939 Burnaby
EXTRADITION
DOB: June 4, 1973

**(1)** The Applicant shall comply will the Rules of the Supreme Court of Canada and file all materials within the time limits as set out in those Rules.

**(m)** In the event that the Applicant abandons his appeal, he shall forthwith surrender himself into custody at the Sheriff's Office, The Law Courts, 800 Smithe Street, Vancouver, British Columbia.

**(n)** The Applicant shall surrender himself into custody at the Sheriff's Office, The Law Courts, 800 Smithe Street, Vancouver, British Columbia at 9:00 A.M. on the day prior to the date fixed by the Supreme Court of Canada for the delivery of the judgment on his leave application. If that day is a Monday, then surrender shall be on the previous Friday. If that day follows a statutory holiday, then surrender shall be on the immediately previous non-weekend work day.

The said recognizance is void, otherwise it stands in full force and effect.

NOTE

Section 763 and subsections 764 (1) to (3) of the *Criminal Code of Canada* state as follows:

"763.  Where a person is bound by recognizance to appear before a court, justice or provincial court judge for any purpose and the session or sittings of that court or the proceedings are adjourned or an order is made changing the place of trial, that person and his sureties continue to be bound by the recognizance in like manner as if it had been entered into with relation to the resumed proceedings or the trial at the time and place at which the proceedings are ordered to be resumed or the trial is ordered to be held.

764.    (1)   Where an accused is bound by recognizance to appear for trial, his arraignment or conviction does not discharge the recognizance, but it continues to bind him and his sureties, if any, for his appearance until he is discharged or sentenced, as the case may be.

(2)   Notwithstanding subsection (1), the Court, justice, or provincial court judge may commit an accused to prison or may require him to furnish new or additional sureties for his appearance until he is discharged or sentenced, as the case may be.

(3)    The Sureties of an accused who is bound by recognizance to appear for trial are discharged if he is committed to prison pursuant to subsection (2)."

7.   Whereas a warrant was issued under section 462.32 or a restraint order was made under 462.33 (3) of the *Criminal Code* in relation to any property (set out legal description) _____;

Now, therefore, the condition of this recognizance is that Jason Boyachek shall not do or cause anything to be done that would result, directly or indirectly, in the disappearance, dissipation or reduction in value of the property or otherwise affect the property so that all or a part thereof could not be subject to an order of forfeiture under section 462.37 or 462.38 of the *Criminal Code* or any other provision of the *Criminal Code* or any other Act of Parliament [462.34].

FORM 33
*(Section 770)*
Certificate of default to be endorsed on recognizance

I hereby certify that _____ has not appeared as required by this recognizance and that by reason thereof the ends of justice have been (defeated or delayed, *as the case may be*).

The reason for the default is

The names and address of the principal and sureties are as follows:

Dated this _____ day of _____, A.D. _____, at Vancouver, British Columbia.

_____
Judge, Justice, or a Judge of the
Provincial Court of British Columbia

RECOGNIZANCE Page **4** of **4**

Case 6:09-cr-02027-MWB-JSS  Document 20  Filed 03/31/15  Page 6 of 39

March 3, 2015

Hon. Jon S. Scoles
United States Magistrate Judge
U.S. Courthouse
111 7th Avenue SE
Cedar Rapids, IA 52401

Your Honor:

I am John Antoniuk and I am writing this letter for my wife, Jennifer Lane, and myself in support of our close friend Jason Boyachek. I am a self-employed, independent singer songwriter from Saskatoon, Saskatchewan, Canada. I am a completely self-managed, full-time folk musician, who over the years has also help manage a number of other artists including my wife, Jennifer, who is also an independent singer songwriter.

I met Jason in 1982 when we were 9 years of age and members of the Goldfin Competitive Swim Club in Saskatoon. Often times we were billeted together at out of town swim meets and spent a lot of time hanging out when we were back in Saskatoon, this was the beginning of our life long friendship. To this day we are very close friends who keep in regular contact and always have. For a few years after high school, Jason and I were practically inseparable, watching movies (even writing one of our own), and generally trying to figure out young adulthood. I always knew that I could put my trust in Jason and that he held the same value for my friendship.

I met my now wife in 2002 and knew that I would ask Jason to be my best man when the time came. Our friendship has been a very important part of my life experience and I was proud to have him at my side on that day. Over the years Jennifer has had the opportunity to befriend Jason, and the two of them have at length discussed common interests like health and philosophy. Jason has been a great friend to my wife and treated her with the utmost respect, as he treats all equally. This makes me feel proud and fortunate to have people of such high quality of character, and like mind, in my life.

We first heard of the news of Jason's arrest from his mother, Jan Boyachek, and I talked to him on a regular basis while he was in holding. Since his release on bail, we have had the opportunity to visit with Jason at his mom's residence in Kimberley, British Columbia a number of times. Family life is very important to Jason and he is an amazing son, brother, and uncle. Through Jason has many positive things in life, it's very difficult to imagine what it's actually like to be in his position through these times, but we have felt that he was handling the stress of the situation exceptionally well.

Jason's fiancée Hara Nikolopoulos lives in Edmonton, and we have had the pleasure of meeting her a couple of times. We are both glad that this relationship has stayed solid since the beginning of this ordeal. Jason is very lucky to have the support and love of such a strong person and I think this speaks a lot to the strength of Jason's character as well. Jennifer and I feel very strongly that if granted bail the best place for Jason is in

DETENTION HEARING
Exhibit D

Edmonton, Alberta with Hara so they have the ability to spend time living together as a normal couple, by living and planning for their future. I know from talking with Jason that it is in this relationship that he receives the most support and the person he has the strongest and deepest connection with. The distance has been hard on their relationship, and living at home with his parents has left Jason inside of a time warp, where he is not able to live a normal adult life. Also Edmonton is within 5 hours of Saskatoon, and Jason's presence there would be a shorter commute for us, allowing for more regular visits with our very good friend.

I have known Jason for over 33 years now and I consider him to be one of my closest friends. He was my companion as a child, my confidant as we became young men together, and stood beside me on my wedding day as my best man. Jason is one of the most sincere and genuine individuals I have ever known. Regardless of the situation, or what you needed from Jason, you could always count on him, and he has always kept his word. I have often thought of Jason throughout the years, as an example of a man whose word is his bond. In a lifetime of friendship, Jason has never once let me down. Please accept this letter as our reference for the strong and positive character of Jason Leonard Boyachek.

We know that Jason is not a flight risk as he would do nothing to endanger his relationships with Hara, family and friends as these relationships are what he values the most in life. As a person who has known Jason most of his life I do not see how he could ever be a danger to the community. In fact I believe any community would benefit to have a person with such integrity and compassion as Jason. He will do what ever the court asks of him as he has done for the past three and half years.

Sincerely,

John Antoniuk and Jennifer Lane

February 27, 2015

Hon. Jon S. Scoles
United States Magistrate Judge
U.S. Courthouse
111 7th Avenue SE
Cedar Rapids, IA 52401

Dear Judge Scoles,

   Our names are Ryan and Charity Ashby and we are writing this letter in support of
our close friend Jason Boyachek. We have lived in Kimberley, British Columbia, Canada for
15 years. We have two daughters ages 8 and 10. Charity is a certified Early Childhood
Educator and runs an early learning program for children ages 3 to 5. She has been doing
this for 5 years. Ryan is an industrial mechanic and has worked at Skookumchuck Pulp for
15 years.

   Through interaction with other parents in the community we met and became good
friends with Jason's sister Tara Drouin and her husband Danny and their two children, Seth
and Avery. Their children are similar in age to our own. We have common interests such as
skiing and camping. Our families get together frequently.

   In the summer of 2008, we were camping with Tara and Danny, Tara invited her
brother Jason to come out and visit us. This was the first time that we met Jason. It became
clear to us that he had a very close relationship with his niece and nephew and enjoyed their
company immensely. Our friendship with Jason took off from that very moment Ryan
learned that he Jason had very similar interests and hobbies such as fishing. Although he
lived out of town he made frequent trips to Kimberley to visit his family. We were
impressed with his dedication, love and support for his family, especially his niece and
nephew. He spent endless hours with them, playing games, watching movies and going for
walks. They are the center of his attention, even during BBQ's or games night with friends;
Jason was always with the kids. It was during these times that our own children grew an
attachment to Jason, and started calling him Uncle Jay. We believe that it is because of his
relationship with his family that Jason moved to Kimberley, where he stayed for about a
year. Based on our friendship with Jason, his amazing relationship with his family and his
influence on his niece and nephew we would leave our children in his care often. We
completely trust Jason and his ability to make responsible decisions about our children when
left in his care.

   Eventually Jason moved back to Vancouver, but still made frequent visits to
Kimberley. During Jason's time in Vancouver he met Hara. Jason and Hara are both from
Saskatoon, which set the grounds of common interests and hobbies. We were very excited to
hear about Hara and were extremely happy for Jason. Hara complimented Jason well, and
we could tell through Jason's affection and attentiveness that he was truly in love with Hara
and she with him. Hara was quick to fit into the family and we all became great friends.
Hara is a beautiful, intelligent successful woman with a great sense of humor. She has
accomplished many goals in her life. Jason is also a very intelligent successful person and
the two of them will go far together. Jason and Hara have been together for almost 4 years
and have been engaged for the past 3 and would like to start a family of their own. Their

DETENTION HEARING
Exhibit E

relationship is one of strength and endurance. We know this to be true because Hara has been by Jason's side through thick and thin while he has been going through the process of his allegations. We feel if released on bail that the best place for Jason is with Hara in Edmonton.

When we heard about Jason's allegations, we were shocked! Jason has maintained a very positive outlook throughout these allegations. Through this process Jason has continued to be very active with his family and he has been very active in living his life to the fullest even being under restrictions. Jason has gone back to school and has been committed to getting his psychology degree. He has been very active in making choices that will benefit his future and help support his fiancé Hara and their future family.

Jason is a soft-spoken man with endless patience. We see this over and over, through his relationship with his family, fiancé and friends and through this process of his legal difficulties. Jason is a very good person, the best! He always puts everyone else's needs before his own. Jason is a very responsible, reliable individual. He is self- motivated and extremely hard working. He is focused on continuing his studies in school, he is devoted to Hara and building their future together and he is devoted to his friends and family. Jason is one of the most thoughtful, kind hearted, sensitive people that we know and he expresses this in all his relationships.

We have supported Jason through this entire process and will continue to support him. Having said that, we have full confidence that Jason will deal with his allegations responsibly. Jason has proven that he is not a flight risk! He has shown up for all his court dates and he has followed all guidelines of his bail. Jason will conform to all responsibilities laid out for him by the courts. In no way is Jason a threat to the community. Jason would not do anything to jeopardize his family, his close relationships or his future with Hara. We know that Jason will deal with his legal issues responsibly and diligently.

Sincerely,


Ryan Ashby                    Charity Ashby

February 20, 2015

Hon. Jon S. Scoles
United States Magistrate Judge
U.S. Courthouse
111 7th Avenue SE
Cedar Rapids, IA 52401

Dear Judge Scoles,

We are Jan and Ted Boyachek the parents of Jason Boyachek. We live at ███████
████████████████████████. We have lived here for 10 years. Jan is retired
and Ted is semi-retired. We have been married for 47 years. We moved to Kimberley
from Saskatoon, Saskatchewan where we had lived for 25 years and where our children
received most of their schooling. We have 3 children – Dustin age 44, Jason age 41 and
Tara age 39. Tara is married and has two children age 10 and 7.

While in Saskatoon, Jan worked for two pension & benefits consulting firms (William
Mercer Limited and Aon Consulting) for a total of 24 years. Jan was also a member of
the Canadian Pension and Benefits Institute and a Director for the Saskatoon Preschool
Foundation. When she first retired to Kimberley she became a Director on the Board of
the Kimberley Golf Course and the Kimberley Curling Club, of which she is still a
Director. Ted worked in both the Mining and Oil & Gas industry for over 30 years and
still provides construction management consulting services to those industries. To name a
few, his client list includes International Nickel, Potash Corporation, AMEC Americas,
Shell Oil, Enbridge Energy, Kinder Morgan, K+S Potash and BHP Billiton. He has been
active in the community by serving as a provincial director for speed swimming and
curling.

Prior to moving to Kimberley, Jason was an apartment building manager for Hollyburn
Properties in Vancouver. During that time he taught himself about the financial markets
and how to day-trade by taking various on-line courses and reading books. He also took
a training program and became a certified Yoga instructor. In 2009 Jason moved here to
Kimberley to be closer to his family and to focus on day-trading, at this time he lived
with us. In the fall of 2010 Jason moved back to Vancouver where he continued to day-
trade and worked doing smaller home renovation projects. In the fall of 2011, Jason
moved back to Kimberley as a result of bail conditions and focused on taking University
classes on-line through the University of Athabasca, in pursuit of a Psychology degree,
for which he has a 3.8 grade point average. He has also done numerous home renovation
projects for friends and family. He has also done a small amount of trading but his
savings have depleted, as a result of legal fees thus he is no longer able to generate any
substantial income from this.

Our family has always been very close and supportive of one another. Jason has been
living with us for 3 ½ years now and his fiancée Hara has been here many times to visit,

every opportunity that she can find. At one point, she lived with us for 6 months while performing her job over the Internet. We have gotten to know Hara very well and have witnessed their relationship first hand. However, Kimberley does not offer Hara any employment opportunities to pursue in her chosen career so she lives in Edmonton Alberta, with the hope that one day Jason will be able to join her there. The hardest part for Jason is that he has not been able to be with Hara full time to help her on a day-to-day basis when she needs him. They have a very loving and supportive relationship and are very committed to one another and plan to start a family as soon as circumstances permit. The fact that they have managed to make things work through such tough circumstances, goes to show the strength of their commitment to one another, this has always amazed us. Even though we love having Jason close to us we believe the best place for Jason is with Hara in Edmonton while he is dealing with his legal difficulties, as it is with Hara that he has the strongest connection and the place we feel he is most needed and the place that will be the most beneficial to him.

Jason is a very strong, intelligent, thoughtful and respectful person and it is because of these characteristics that friends and family always rely on him for help, he is very conscientious and sensitive to the needs of others. These characteristics are very evident to us as we get to see how he interacts with his niece and nephew, always helping them have new experiences, attending school functions and in numerous other ways. They are very close, as Jason has nothing but love and patience for them. He is very concerned about our health, both physically and mentally, providing suggestions and ideas about what we should do to stay healthy. He is also very conscientious about his own health and fitness and takes very good care of himself, by regularly running and maintaining a regular yoga practice.

Jason is not a flight risk. He has abided by all the restrictions imposed on him for the last 3 ½ years. He wants to deal with these legal difficulties and he will not abandon or jeopardize his family and his fiancée by trying to avoid his legal responsibilities. Jason's true character, the person we know, is at the opposite end of the pendulum swing from being a danger to the community. We are prepared to help in his supervision to any extent, if need be.

Sincerely,

*Jan Boyachek*

Jan Boyachek

*Ted Boyachek*

Ted Boyachek

March 3, 2015

Hon. Jon S. Scoles
United States Magistrate Judge
U.S. Courthouse
111 7th Avenue SE
Cedar Rapids, IA  52401

Your Honor,

My name is Barry Boyachek and I reside at █████████████████████████. I have lived in the city of Edmonton for the last 36 years. I previously worked for the power utility (EPCOR) for 30 years and I' am currently semi retired and have my own consulting company.

Jason Boyachek is my nephew he is a reliable, soft-spoken and considerate person who is very devoted to his family and friends.  I understand the allegations that have been brought forward against him. I firmly believe that Jason will honor his responsibilities to the court and that he will deal with his legal difficulties in a responsible manner. Jason would not flee to avoid his legal obligations because of his commitment to family and friends who are very important to him.  He would not do anything to jeopardize these relationships. Jason is a very focused and self-motivated individual with strong ties to family and friends because of these traits and his bond to family structure he would not be a danger to the community.

Jason's relationship with his fiancé, Hara, has grown strong and has matured overtime, they have been together for 4 years and engaged for 3 years, they are extremely committed to each other and to starting a family together.  Jason is an intelligent person who is always fine-tuning his skills to push himself to be a more productive individual. He is a very hard working person who is focused on his education.  Jason is a very compassionate person who is sensitive to other people's needs and would be a great asset to any community.

I know that Jason hopes to be granted bail and be able to come here to Edmonton to be with his fiancée Hara.  I look forward to my nephew being close to me so that we can spend time together.  I will be there to support him anyway I can whether it be having him help me with my work or using my contacts here in Edmonton to help him find work.

Sincerely,

*Barry Boyce*

Barry Boyachek

████████████████████████████

February 20, 2015

Hon. Jon S. Scoles
United States Magistrate Judge
U.S. Courthouse
111 7th Avenue SE
Cedar Rapids, IA 52401


Your Honor,

We are Terry and Cheryl Boyachek, Jason Boyachek's uncle and aunt, we have lived in Saskatchewan, Canada for 27 years. Terry is employed at the local steel mill in Regina and Cheryl works at the provincial courthouse. We have two children who are both attending University here in Regina.

We have always had a good relationship with Jason and his family and have supported him in all his endeavors. We know of Jason and Hara's relationship, they have been together for 4 years and engaged for 3 years and are committed to each other. Hara is the most significant part of his life and they are planning a family in the future. He also plays a huge role in the lives of his niece and nephew.

We are aware of the allegations against Jason and believe he will take responsibility and will not flee to avoid his legal difficulties. We believe he is not a danger to the community and will honor his responsibilities to the court. We also believe he will not abandon his fiancé or his family as they are of the highest importance to him.

Our nephew is a good reliable person he is self-motivated, focused on school and devoted to family and his friends. He has proven to have lots of integrity, is very honest and trustworthy. From a very young age he has always been extra sensitive to the needs of others, he is a very caring and compassionate person. We write this letter in full support of Jason who has no criminal record. Jason is not a flight risk, and he will do what is expected of him when it comes to his legal obligations. Jason would not jeopardize his family or his close relationships with his friends and relatives.



Sincerely,



Terry Boyachek



Cheryl Boyachek

DETENTION HEARING
Exhibit H

March 5, 2015

Hon. Jon S. Scoles
United States Magistrate Judge
U.S. Courthouse
111 7th Avenue S.E.
Cedar Rapids, IA 52401 ·

Dear Judge Scoles,

I am Dustin Boyachek, the older brother of Jason Boyachek. I live in Nelson, British Columbia and have been here for 9 years. Since being in Nelson, I was first employed at the Nelson Brewing Company and am now employed by the City of Nelson at their Aquatic Centre as a Life Guard and Swim Coach. Prior to Nelson, I lived in Calgary for 10 years and worked in the granite fabrication and installation industry.

My brother is very self-motivated and disciplined, as is seen by his commitment to his University studies and having taught himself about the financial markets and day trading. He is very reliable, he is always there to help out any member of his family. He has been for me when I needed him.

Jason is very close with our sister's two children, Seth and Avery. He has spent a lot of time with them since they were born, even when he had to travel from Vancouver to Kimberley to visit them. He is a dedicated and responsible uncle. He is lucky to be able to see them every day and he is there to look after them whenever the opportunity arises.

Family and friends are very important to Jason. He is kind and considerate and sensitive to the needs of others. He has always wanted to help others and puts their needs before his own. Even when we were kids he has always wanted to help others and put their needs before his own. He is one of the smarter people I know, his knowledge of current events, politics and the financial markets is very helpful to me. He helps me stay up to date on what is happening in the world.

I have met his fiancée, Hara, several times while visiting my family in Kimberley. I have seen that they have a great relationship, regardless of the fact that it is a long-distance relationship, and I know for a fact that they want to have children as soon as possible. I have seen how he is with Seth and Avery and know that he will be a great father. The best place for him is with Hara in Edmonton. When talking to Jason she is the topic that he most wants to bring up – that and the life they hope to start together.

DETENTION HEARING
Exhibit I

Jason is definitely not a flight risk nor a danger to the community. He will do everything required to deal with these legal responsibilities. He will not jeopardize the people that are important to him, that is Hara, his family and his friends.

I will always be there to help Jason in any way.

Sincerely,

Dustin Boyachek

Hon. Jon S. Scoles
United States Magistrate Judge
U.S. Courthouse
111 7th Avenue SE
Cedar Rapids, IA 52401

March 1, 2015

Your Honor,

I have been a close friend of Jason Boyachek's since we met in 2008. I have been residing near Edmonton, Alberta for the last two years while working in Montreal, Quebec during college semesters. I hope that soon, Jason will also be residing in the Edmonton area and will be allowed to resume a normal life. The goal of this letter is to persuade you to release him back to Canada on bail, pending his trial in the USA.

Jason and I met in Vancouver in 2008 at a yoga teacher training course. He immediately struck me as a thoughtful, soft spoken and reliable individual. In the seven years since, I have been proven right. For the couple years when we were both residing in Vancouver, I had many occasions to get to know Jason. He is incredibly self-motivated, a hard worker, and a conscientious individual. Though he did not choose to pursue teaching yoga, his determination during our training, and his subsequent devotion to the practice speaks volumes about his character. It is the same whole hearted devotion I see in other aspects of his life.

Since his arrest, I have had the opportunity to meet Jason's family. His relationships with his mother and sister are supportive and full of mutual respect and love. He experiences his relationship with his niece and nephew as a joy and also sees his involvement in their lives as a responsibility. When Jason met Hara, I was happy that he had found a life partner. He speaks about her with great respect and I know they are eager to start their own family. Jason would make a wonderful father, and I certainly hope he has the opportunity to become one in the very near future.

As someone who is responsible for educating 17 – 20 year olds in a college setting (I have been working as an English literature professor for 4 years), I have personal experiences with all types of people. I draw upon both my professional judgment and my personal experiences with Jason when I assure you that he is not a flight risk and will fulfill his duty in all respects in regards to his legal responsibilities.

I understand the allegations against Jason and I am fully confident that he will meet his legal commitments on all levels. In all of Jason's actions, I have seen a continuous stream of caring and a sense of duty towards his family and friends – I believe he would not do anything to jeopardize these important relationships. While he awaits trial, I think it is only fair to allow him to build his relationship with his fiancée Hara and the Edmonton community. He is a responsible man who will honor his legal obligations.

Sincerely Yours,

Monika Karpinska
B.A., B.Ed., M.A.
Department of English
John Abbott College
Montreal, QC, Canada

DETENTION HEARING
Exhibit J



February 22, 2015

Hon. Jon S. Scoles
United States Magistrate Judge
U.S. Courthouse
111 7th Avenue SE
Cedar Rapids, IA  52401

Dear Judge Scoles,

I write this letter in support of my nephew **Jason Boyachek**, whom I have known all of his life. I am aware that the United States suspects Jason of drug charges and even knowing that, I support him.  His mother, my sister, has kept me informed throughout this ordeal.

My husband, Lyle, and I have been married for forty-two (42) years and have lived in the small town of Baldur, Manitoba for all of that time.  We are both retired now from long time careers. I was hired by our local school division in 1972 and, except for a few years off to raise our daughters, I was employed by them until my retirement in 2006. I was a classroom teacher and/or resource teacher for all of those years except for the last ten (10) years when I was the Student Services Administrator, working out of the school division office.  Lyle spent his entire career as the medical technologist (lab and x-ray) at the Baldur Hospital for thirty-three (33) years, retiring in 2004.  We have two daughters, Hollie and Heidi.  Hollie is a classroom teacher in Grandview, Manitoba and has been married for nine (9) years. She and her husband have three (3) children. Heidi is a chartered accountant, living in Stonewall, Manitoba and has been married for eight (8) years.  She and her husband have two (2) children.

Although I knew Jason much better in his younger years than in adulthood, I can state with certainty that he was brought up in a home with exceptional family values.  A home that was safe, positive and supportive with parents who exemplified honesty and integrity.

I know Jason to be of very good character.  Besides the values instilled by his parents, his many years as a member of competitive swim teams caused him to develop strong character traits of commitment, respect and compassion which he has carried into

adulthood. He is a soft-spoken, sensitive and intelligent man. He has proven that he is self-motivated, reliable and hard working. He has always been honest with his family and friends.

Jason has always been close to his family and has been someone they could depend on. His relationship of four (4) years with his fiancé Hara, has enhanced his responsibility and dependability. He and Hara are very committed to each other and to starting their own family.

Jason's entire family is of the highest importance to him and he has shown that he will not do anything to jeopardize any of them. Throughout the time that he has been dealing with his legal difficulties in Canada, he has shown that he will abide by the law while free on bail and will honour his responsibilities to the court. He most certainly is not a danger to the community nor is he a flight risk. He will not jeopardize his relationships with his fiancée, family or friends.

Since September of 2011, the lives of Jason, Hara and his family have been put on hold. Their every waking hour has had this huge burden hanging over them. Through it all they have been strong, dedicated and determined to bring justice to fruition.


Yours truly,

Twyla Kastrukoff

February 24, 2015

Hon. Jon S. Scoles
United States Magistrate Judge
U.S. Courthouse
111 7th Avenue SE
Cedar Rapids , IA  52401

Re: Jason Boyachek

Dear Judge Scoles,

My name is Shannon Loughran and I am writing this letter in support of my friend Jason Boyachek, in the hopes that he may be granted bail and allowed to come to Edmonton, Alberta. I have worked at the University of Alberta for 12 years as a professional Facility Planner/Interior Designer with the Office of the University Architect. I am married and have two children. We live a healthy lifestyle and really enjoy living in a positive, active community such as Edmonton, Alberta.

I have known Jason since growing up in Saskatoon, Saskatchewan beginning in 1984. Jason comes from a loving, supportive, well-balanced family. During our youth, Jason and his siblings were high caliber athletes with the Saskatoon Goldfins competitive swimming club. We were proud teammates of Team Saskatchewan for the 1989 Jeux Canada Games together and our swim team was a very close-knit family. I had the good fortune of being friends with Jason, spending our high school years together. As a friend of Jason's, I knew him to be an honest, sincere and caring friend. Jason's gentle disposition made him a positive influence to be around. He was a genuine, kind-spirited person, with a warm smile and bright future.

Since Fall 2013, Jason and I reconnected when I learned of his extradition order and have kept in regular contact since then. Over this time, I learned of his loving, supportive fiancé, Hara Nikolopoulos, who lives in Edmonton as well. Hara works at the University of Alberta as a researcher in Nutritional Science. Through my conversations with Jason I have come to see the special and positive role Hara plays in his life. I look forward to getting to know Hara, someone who is such an important part of my friend's life.

In the past year, I also learned that Jason became a certified yoga instructor a few years ago, and it's been with his encouragement that I continue doing yoga on a regular basis. Jason is committed to his health: he runs, skis and swims on a regular basis.  He has been working towards a Bachelor's degree in Psychology.

Jason is thoughtful and self-reflective in his life, always striving to improve and grow as a person. Once he is free to pursue his career path, he is inspired and committed to help others using his education and experience. I believe Jason has a very good perspective

DETENTION HEARING
Exhibit L

and attitude of his current situation. I have no doubt Edmonton, Alberta is the best place for Jason to live if granted bail. My husband and I intend on seeing Jason and Hara on a regular basis.

I believe Jason is a very reliable and honest person and as such, I believe he will do what is required of him if granted bail. Jason is very devoted to Hara and his family and would not do anything to jeopardize these relationships, as they are the most valued things in his life. He is definitely not a flight risk.

Thank you for your consideration.

Yours truly,

Shannon Loughran

Hon. Jon S. Scoles                                    Date: February 19, 2015
United States Magistrate Judge
U.S. Courthouse
111 7th Avenue SE
Cedar Rapids, IA  52401


Dear  Judge Scoles

Re: Jason Boyachek


My name is Mark Morris.  I live in Winnipeg Manitoba, Canada, where I have lived for 4 years.  I currently work in the broadcasting profession as a radio announcer for a station called QX 104.  I am very community minded, helping out homeless shelters, children's charities and more in the Winnipeg area.  I've been working in the broadcast arena for more than 15 years.

I met Jason Boyachek in 1988 in Saskatoon Saskatchewan, Canada.  We attended the same high school, Marion Graham Collegiate.  Since that time we have been great friends growing up together and continuing to be in contact over the many years after leaving our hometown.  I grew up with Jason's family in Saskatoon and have stayed in contact with his mother and siblings.  Jason had a very lovable, compassionate and supportive upbringing.  He is responsible, caring and cooperative.

I have talked to Jason over Skype and phone lines and he has told me all about his relationship with Hara.  They have being dating for 4 years and engaged for 3 of them.  I know for a fact that there is nothing more that he wants than to start his life with her.  He is very committed to Hara and wants to start a family as soon as he can in Canada.

I strongly feel that Jason will honor any responsibilities to the court that he might have.  He is of great moral character and will not be a risk of flight during the courts procedures.  Jason wants to do everything he can to put these allegations behind him and start life with Hara.  At the same time take the responsibilities that are requested of him.

Please consider my letter as a testimony of character for Jason Boyachek.  I truly believe that he is not a high risk for the courts and that he is a devoted family man waiting for this ordeal to get behind him.


Yours sincerely,


Mark Morris
Winnipeg, MB
Canada

February 22, 2015

Hon. Jon S. Scoles
United States Magistrate Judge
U.S. Courthouse
111 7th Avenue SE
Cedar Rapids, IA 52401

Dear Judge Scoles,

My name is Hara Nikolopoulos. I am Jason's fiancée. I live at ███████████████████. I have been living in Edmonton for 14 years. I grew up in Saskatoon, Saskatchewan where I lived until 2001. I have a small family, just me, my mom, sister and niece but we are very close. After I moved to Edmonton, I convinced my sister to move here just four months later, and one year after that my mom moved here as well. That was very brave and risky for my mother because she had her home and successful business in Saskatoon but that just shows how close and supportive of a family we are.

I moved to Edmonton to transfer my studies in Commerce from the University of Saskatchewan to the University of Alberta. I then went on to complete a Bachelor's degree in Nutrition and Food Science and a Master's degree in Nutrition and Metabolism.

I currently work in research as a Program Manager for the University of Alberta. I have been in my current position for approximately a year and a half; however, I have been working in research at the University of Alberta since 2008.

I met Jason in 2011 while I was visiting my best friend in Vancouver, British Columbia. Jason and I met through mutual friends and hit it off immediately. Right away I could see that Jason is a kind, loving and caring person. I have gotten to know Jason extremely well over these last three and a half years, and through his actions, Jason has demonstrated that he is extremely dependable, reliable and trustworthy. I fell in love with Jason and want to share my life with him because he has integrity a strong moral character. Jason is very polite and respectful and goes out of his way to help his family and friends. Family is the most important thing to Jason; he always puts his family first. I know without a doubt that Jason would never do anything to hurt or jeopardize me, our future together or his family. Never.

I have been waiting for over three years to be with Jason. We want more than anything to get married and start a family. I will be 37 years old next month and I am well aware that our chances to have children decrease every year but there is no other person in this world who I trust or love more than Jason, so I continue to endure this horrible hardship put on all of us.

I own a condominium here in Edmonton. This is where Jason and I will live if he is granted bail. I am prepared to help in his supervision if necessary. Jason is in no way a danger to

DETENTION HEARING
Exhibit N

the community. For the last three and a half years, Jason has abided by all of the restrictions imposed on him. We want to deal with this so we can start our life together. This has been the hardest thing both Jason and I have ever had to face but we continue to love and support each other. Jason not only has my support but the support of my family as well. My mom has already offered to employ Jason as a start to help him get his life back. Jason is not a flight risk. The only place he wants to be is here with me and the family we hope to start. Please give us this chance.

Sincerely,

Hara Nikolopoulos

March 5, 2015

Hon. Jon S. Scoles
United States Magistrate Judge
U.S. Courthouse
111 7th Avenue SE
Cedar Rapids, IA  52401

Dear Judge Scoles:

My name is Leigha Stankewich and this letter is in regards to my first cousin, Jason Boyachek. I am twenty-six years old and have lived in Calgary, Alberta, Canada my whole life. I am currently living on my own and I have been working in the financial services industry for over seven years. I have recently joined the Bank of Montreal Nesbitt Burns; Wealth Management Division as an Investment Representative. I am currently working towards my Chartered Investment Manager designation. I am actively involved on the committee board as co-chair for a local non-profit organization, called Decidedly Jazz Danceworks.

It has been several years since I had heard about the allegations against my cousin, Jason. It has been very hard on my entire family. There is lots of stress and constant worrying, which is not healthy for anyone. Our family trips are limited these days, which is hard on a family that is so focused on spending time with each other.

Jason is the son of my mother Wendy's older sister, Jan. With Wendy being the sixth child of the family, all of her siblings had children way before I was born. Thus, most of my cousins are ten to fifteen years older than I am. That being said, I always had a lot of inspirational people in my life to look up to, particularly my cousins Jason, his sister Tara and their brother Dustin. When I was a young girl, we would always go to the pool together because the three of them were highly competitive swimmers. This always had inspired me in my thirteen years of Figure Skating. I have many fond memories as a child with Jason. I remember being five years old and spending time at my Aunt Jan's house where Jason would do crafts or read books with me. He always showed kindness and compassion towards me, even though I was fourteen years younger than him. I would see this wonderful family at least twice a year, which is great for being a six hour drive apart. As we got older, we continued to spend Christmas time together. Christmas is my favorite time of year and I always look forward to spending time with Jason. My favorite Christmas was when I was twelve years old and it was spent in Kananaskis, Alberta, Canada with my cousins, Aunt, Uncle & parents. We all went skating on the pond which turned into a full on game of tag, and we went cross country skiing during the day. My family is very focussed on family activities and always have been – either outside in the snow or inside playing board games. Each Christmas was amazing and there was plenty of holiday cheer and time together. I had the most amazing childhood – and I can thank my cousins: Jason, Dustin & Tara for that. Being an only child people would always ask me if I wish I had siblings… but in a way, they were my siblings. I still look forward to Christmas every year, especially now that Tara has a husband and two children and Jason has a fiancé Hara. I love watching Jason interact with his

DETENTION HEARING
Exhibit  O

niece Avery and nephew Seth because he treats them like his own children and I know he would be a great father.

Jason is soft spoken like me (and most of our family) but never too shy to ask how I'm doing, or how my new job is, or what the ski conditions are like. These days I have a good relationship with Jason because he no longer feels like my older cousin. We can talk about more in depth issues like the Oil & Gas industry in Canada & US, or the stock markets, or great movies or golfing. The last two summers I recently took up golf with Jason, Tara & my Aunt Jan. It has been a great way to bond with each other. I have always been supportive of Jason. He is self-motivated and hard working.

Hara is Jason's wonderful fiancé who has been with him for four years. They are so committed to each other even while she lives in Edmonton Alberta, Canada. I only had the privilege to see Hara for three Christmas holidays but as soon as I met her, I knew she was perfect for Jason. She is also soft spoken, genuine and caring. Their relationship is so great for Jason because he has found someone that he cares deeply about, enough for them to want to start a family together.

The whole family has gone through a lot of stress with what has been happening to Jason. I am a huge believer that stress is one of the causes of cancer and mental health illnesses. I do not wish this on any of them, but I fear they are more susceptible to it now. Seth and Avery who are just two young children shouldn't have to suffer and see their Grandma, Grandpa; Mom & Dad suffer with the agony and grief that this situation has caused them.

From Jason's wonderful family-oriented upbringing, I know the type of person he is. He is not one to run away from his responsibilities and would never jeopardize his family or friends. He would never be a threat to the community.


Sincerely,

Leigha Stankewich

February 27, 2015

Hon. Jon S. Scoles
United States Magistrate Judge U.S.
Courthouse 111 7th Avenue SE
Cedar Rapids, IA 52401

Your Honor,

We are writing this letter in support of Jason Boyachek, our nephew. Wendy is a sister of Jason's mother and our families are very close. We moved to Invermere, British Columbia, a small community an hour north of Kimberley, 5 1/2 years ago to open a small gift shop to semi-retire. We lived and worked in Calgary, Alberta for 30 years. Daryl was employed at Brasso Nissan for 30 years and Wendy was self-employed with Fifth Avenue Collection for 25 years. We have one daughter, Leigha, who lives and works in Calgary.

We have a very close relationship with Jason. He is kind, honest, and very loyal to his family and his fiancée, Hara. He would never do anything to jeopardize his relationship with his family and Hara; he always puts them before himself. We have welcomed Hara into our family. She is a fine young lady with good morals and is very supportive of Jason; we believe that being with Hara in Edmonton, Alberta is the best place for Jason.

We are fully aware of the allegations against Jason and know he will honor his responsibilities to the court by doing what the court asks of him. We firmly believe that Jason is in no way a danger to the community, nor is he a flight risk.

Jason really enjoys spending time with his little nephew and niece and is looking forward to having this matter resolved with the courts so he and Hara can start a family of their own.

We have always supported Jason and continue to do so.

Sincerely,

*W. Stankewich*
Wendy Stankewich

*Daryl Stankewich* (signature)
Daryl Stankewich

DETENTION HEARING
Exhibit P

February 20, 2015

Hon. Jon S. Scoles
United States Magistrate Judge
U.S. Courthouse
111 7th Avenue SE
Cedar Rapids, IA 52401

Your Honor,

My name is Anna Syrianou. I am writing this letter in support of Jason Boyachek. I am the mother of Jason's fiancée, Hara Nikolopoulos. I have lived in Edmonton, Alberta for the past 12 years where I own and operate a successful business called Anna Rianou Salon and Spa.

I have gotten to know Jason through Skype, telephone calls and my daughter. In talking with Hara I have come to see the type of person Jason is, through the way he treats and supports her. I see Jason as a very respectful, trustworthy and caring person who would do anything for those close to him. I feel very lucky that my daughter has found such a wonderful person to share her life with and hopefully in the near future start a family together. My family is very important to me and there is nothing I would not do for them. I already think of Jason as part of my family as a result of the loving relationship that he and my daughter share. He is the most important part of her life and therefore a very important part of mine.

I am very busy with running my business and attending to my own clients. I have always had a hard time in the past finding someone competent, responsible and trustworthy enough to help me with the running of my business, so I tend to take on everything myself. I know Jason to be a very intelligent, hardworking and honest person. It is for these reasons that if Jason is granted bail and allowed to live in Edmonton that I would want him to work for me, so that he can help me by taking on some of my workload. Also so that he and my daughter have a chance to be together and work towards a future with one another.

I am writing this letter to confirm that Jason has an employment opportunity with my business. I am aware of the allegations against Jason. I don't believe nor can I even see how such a kind and caring person could be a danger to the community. I also know that Jason is not a flight risk for he would never abandon my daughter or his family and friends.

Sincerely,

Anna Syrianou

March 3, 2015

To:     Hon. Jon S. Scoles
        United States Magistrate Judge
        U.S. Courthouse
        111 7th Avenue SE
        Cedar Rapids, IA  52401

Dear Judge Scoles.

My wife, Joyce, and I are writing this letter to you in strong support of our nephew, Jason Boyachek. Jason is the second son of my sister, Janice, and brother-in-law, Ted who now live in Kimberly, British Columbia. We live and work in Swan River, Manitoba which is a little more than an hour from the town where my sisters and I were raised, Kamsack, Saskatchewan. My father purchased a plumbing business in 1964 which now I own and operate with our son. We are both journeyman plumbers. Joyce is a Home Economist, who worked for the Province of Manitoba's agriculture department as an adult class instructor and then as a marketing lab instructor at the Swan Valley Regional Secondary School for the past 20 years.

We are a close family now separated by Canada's vast space as everyone moved to various cities to advance their career opportunities. Our families try to reunite at least once a year somewhere easy for us all to get to. In the summer of 2014, we drove 9 hours with our daughter and two grandchildren to meet in the Cypress Hills on the edge of Alberta. We had an amazing time with our extended families playing, visiting, and reminiscing. We were all pained by missing Jason and his fiancé, Hara. They should have been able to be with us all continuing to make memories with our families. We all desperately wished they had been there.

It was 3 ½ years ago now that Janice called us with the unbelievable news of the allegations against Jason. Ever since, the family has been wrought with pain and suffering worrying about what will happen to Jason. Janice, Ted, and their children have spent years now suffering the loss of energy, time, and money. The cost of the past few years to Jason and his family has been immense.

Jason and Hara finally found each other and have now been in love and dedicated to each other for close to 4 years. They have been planning to marry for 3 years. Jason comes from a family that has modeled commitment to each other. Joyce and I have been married for 42 years. Janice and Ted for 47 years, and two of our younger sisters have marriages of 42 years and 29 years respectively. Our children have marriages of 15 years and 12 years as well. Jason and Hara are committed to each other and to our families as a whole. I am certain that Jason would do nothing to abandon his family or put their love and support at risk. They mean the world to him. Jason wants nothing more than to start a family with Hara; he is devoted to her and their future together. We have not had the opportunity to meet Hara, however Jason's parents speak very highly of her and are so proud of her standing by Jason's side through this difficult situation.

DETENTION HEARING
Exhibit R

I have fond memories of our children and Janice and Ted's children spending summer holidays together. As the children grew older they would exchange visits by taking the bus by themselves as we parents were not always able to drive them. We always felt confident our children including Jason were reliable and trustworthy to make these trips by themselves. I have memories of him as a little boy running around with his cousins, my children, taking care of them and playing in the yard.

Jason is a soft spoken and gentle person. Having conversations with him, he shows his intelligence and his immense interest in politics and world affairs. Jason demonstrates his self motivation and determination to use this difficult time by continuing his education and helping his parent around their home.

Jason loves his family so very much. He and his siblings spend as much time together as possible but it is his young niece and nephew, Seth and Avery, that he adores and is so devoted to. I remember when Seth was born, Tara, Jason's sister, laughing about how Jason was mesmerized by his new baby nephew and would not leave his side. He made ever effort to visit them as much as possible as he did not want to miss any part of them growing up. He spends hours playing with them.

I firmly believe Jason is not a danger to anyone or anything. He can be trusted to do what is expected of him in regards to his responsibilities to the court and these legal struggles. Jason has always been and is a loyal and hard working man.

You're Honor, I implore you to trust Jason as he is a reliable individual and a man of integrity. I firmly believe that Jason would do nothing to hurt his family for they are of the highest importance to him.

Respectfully,

Leonard Trevellyan

Joyce Trevellyan

February 26, 2015

Hon. Jon S. Scoles
United States Magistrate Judge
U.S. Courthouse
111 7th Avenue SE
Cedar Rapids, IA 52401

Your Honor,

My name is Tara Drouin, I am Jason's sister, and my husband's name is Danny Drouin.
We live in Kimberley, British Columbia and we have lived her for 9.5 years. We have
two children, our son is 10 years old and our daughter is 7 years old. I am the Operations
Administrator for a golf course and my husband is a mechanic for the City of Kimberley.

We have a great relationship with Jason and see him daily. He is very supportive to us,
he is a rare person that is extremely caring and over flowing with love for others. He
helps us with childcare and getting our children to extra curricular activities. He has been
very involved in our children's lives, even before these allegations were made against
Jason. They have many Uncles but Jason is simply known as Uncle to them. Jason has
such a great relationship with our children, friends of our family always comment on his
relationship with them and wish that their own brothers and sisters had that with their
children. Jason is a sensitive, thoughtful and compassionate person who encourages our
children to lead their lives with the same principles. He has a very special relationship
with each of our children and they are so lucky to have him in their lives. We have made
him our children's legal guardian because of the trust we have in him. Also because of
his close relationship with them and he is the type of person we would want to be
responsible for our children.

Jason and his fiancée, Hara, have been together for close to four years and engaged for
three. Hara is very close with our family and we have had the pleasure to witness her
devotion to Jason. We are so thankful that Jason has found such a wonderful person as
Hara to share his life with. Our family adores her and we cannot wait for her and Jason
to start a family of their own. Hara is his greatest support and the love they have for each
other has helped them through these tough times. It is very obvious to us because of the
time we spend with Jason that his connection with Hara is very deep and strong. This is
why we truly believe the best place and environment for Jason is to be with Hara in
Edmonton, Alberta.

We know Jason very well and the most important things in his life are his relationships
with Hara, his family and friends; and his health and the health of those around him. He
is not a materialistic or a selfish person. What we are trying to get a cross is that he
would never in anyway abandon those of us who are close to him; it is for these reasons
we know he is not a flight risk and will do everything the court asks of him. He would

never do anything that would cause him to lose the most important things in his life, his relationships with those he loves and cares about. He will not flee to avoid his legal responsibilities because he is devoted to Hara, his family and friends and we are the highest importance to him. I know Jason will deal with his legal difficulties in a responsible manner and will honor his responsibilities to the court. Jason is a very trustworthy and reliable person and not a danger to the community.

Sincerely,

Tara Drouin

Danny Drouin

February 25, 2015

Hon. Jon S. Scoles
United States Magistrate Judge
U.S. Courthouse
111 7th Avenue SE
Cedar Rapids, IA 52401

Your Honor,

We are writing this letter in support of our good friend Jason Boyachek. I'm Clint Tarala and my wife is Jennifer Harper and we have been together for over 20 years and have two children, ages 17 and 14. We live in Gray Creek, British Columbia, where we have owned a home for the past 6 years. I have worked in the Kootenays as a Fisheries Technician for the past 15 years. Together, Jennifer and I also own a furniture retail business based out of Nelson, British Columbia for the past 3 years.

I met Jason in 1993 through my wife Jennifer who had gone to high school with him in Saskatoon. He has always been a good friend to the both of us and is a very honest and trustworthy person who I can always count on. He is of very good character and always does what he says he's going to do. He is very courteous and has always treated my family with the utmost respect.

We are good friends with Jason's family and often spend time with his mother Jan, his brother Dustin and his sister Tara and her husband Danny and their two children, Seth and Avery. We see Jason and his family regularly and have seen how the last three and half years have been very stressful for Jason, his fiancé Hara and his family. The situation that they have had to go though for so many years is incredibly difficult for everyone.

Jason has a very good relationship with his fiancée Hara, who we have met many times. We have been to Vancouver to support Jason when he has been attending court during this extradition process, as has Hara. They are a very good couple and are extremely attentive to each others needs. We think that how they have endured such circumstances together goes to show the strength of their connection to one another. We hope that if Jason is granted bail that he will be able to be with Hara in Edmonton, Alberta so that they can start working towards their future life and family together.

We are aware of the allegations against Jason and are willing to support him in any way we can. Jason has no criminal record. He is a good person, with good family ties and values.

DETENTION HEARING
Exhibit T

Jason has proven to us to be thoughtful, kind and compassionate and based on this type of character and his exemplary behavior, for last three and a half years while on bail, we believe that Jason is not a flight risk. He will not flee to avoid his legal responsibilities because Hara, his friends and family are of the utmost importance to him and he would do nothing to jeopardize or hurt these relationships. Jason is certainly not a danger to the community and we know that he will do exactly what is expected of him and will honor his responsibilities to the court.

Sincerely,

Clint Tarala

Jennifer Harper

Presented to the Court by the foreman of the
Grand Jury in open Court, in the presence of
the Grand Jury and FILED in The U.S.
DISTRICT COURT at Seattle, Washington.

*SEPTEMBER 17* 20 *08*

BRUCE RIFKIN, Clerk

By _____ Deputy

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | NO. CR06-157 MJP |
| v. | ) | SUPERSEDING INDICTMENT |
| HENRY C. ROSENAU, | ) | |
| Defendant. | ) | |

06-CR-00157-INDI

The Grand Jury charges that:

## COUNT 1

### (Conspiracy to Import Marijuana)

Beginning at a time unknown, but within the last five (5) years, and continuing through on or about September 21, 2005, within the Western District of Washington, and elsewhere, HENRY C. ROSENAU did knowingly and intentionally conspire with others, known and unknown, to import into the United States from a place outside thereof, being Canada, marijuana, a substance controlled under Schedule I, Title 21, United States Code, Section 812.

The Grand Jury further alleges that this offense involved one thousand (1,000) kilograms or more of a mixture and substance containing marijuana.

All in violation of Title 21, United States Code, Sections 952, 960(a)(1), 960(b)(1)(G), and 963.

DETENTION HEARING
Exhibit U

1        **COUNT 2**

2        (Conspiracy to Distribute Marijuana)

3            Beginning at a time unknown, but within the last five (5) years, and continuing

4    through on or about September 21, 2005, within the Western District of Washington, and

5    elsewhere, HENRY C. ROSENAU did knowingly and intentionally conspire with others,

6    known and unknown, to distribute marijuana, a substance controlled under Schedule I,

7    Title 21, United States Code, Section 812.

8            It is further alleged that this offense involved one thousand (1,000) kilograms or

9    more of a mixture and substance containing marijuana.

10           All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A),

11   and 846.

12       **COUNT 3**

13       (Possession of Marijuana With Intent to Distribute)

14           On or about September 21, 2005, within the Western District of Washington,

15   HENRY C. ROSENAU knowingly and intentionally aided, abetted, induced, and

16   willfully caused the possession with intent to distribute of marijuana, a substance

17   controlled under Schedule I, Title 21, United States Code, Section 812.

18           It is further alleged that this offense involved (100) kilograms or more of a mixture

19   and substance containing marijuana.

20           It is further alleged that this offense was committed during and in furtherance of

21   the conspiracy charged in Counts 1 and 2 above.

22           All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B),

23   and Title 18, United States Code, Section 2.

24       **FORFEITURE ALLEGATION**

25           Pursuant to Title 21, United States Code, Section 853, the Grand Jury alleges that,

26   as a result of the felony offenses listed above, punishable by imprisonment for more than

27   one year, the above named defendant shall forfeit to the United States of America any and

28   all interest in property, real or personal, constituting, or derived from, and proceeds

SUPERSEDING INDICTMENT/ROSENAU — 2
CR06-157

UNITED STATES ATTORNEY
UNITED STATES COURTHOUSE
7™ & STEWART
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   obtained, directly or indirectly, as the result of said criminal offenses, and shall further

2   forfeit any and all interest in property, real or personal, used or intended to be used, in any

3   manner or part to commit, and to facilitate the commission of such felony offenses.  If

4   any of the forfeitable property, as a result of any act or omission of the defendant cannot

5   be located upon the exercise of due diligence, has been transferred or sold to, or deposited

6   with, a third person, has been placed beyond the jurisdiction of the Court, has been

7   substantially diminished in value, or has been commingled with other property which

8   cannot be subdivided without difficulty, it is the intent of the United States, pursuant to

9   Title 21, United States Code, Section 853(p), to seek the forfeiture of any property of the

10  defendant, up to the value of the forfeitable properties.

11                          A TRUE BILL

12                          DATED:

15                          Signature Redacted Pursuant to Ninth Circuit Policy
                            FOREPERSON

19  JEFFREY C. SULLIVAN
    UNITED STATES ATTORNEY

22  DOUGLAS B. WHALLEY
23  ASSISTANT UNITED STATES ATTORNEY

25  RONALD J. FRIEDMAN
    ASSISTANT UNITED STATES ATTORNEY

27
28  SUSAN M. ROE
    ASSISTANT UNITED STATES ATTORNEY

UNITED STATES ATTORNEY
UNITED STATES COURTHOUSE
7TH & STEWART
SEATTLE, WASHINGTON 98101
(206) 553-7970



FILED ___ ENTERED ___
LODGED ___ RECEIVED ___

MAY - 4 2011

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY ___ DEPUTY



**United States District**
*Western District of Washington*



06-CR-00157-BOND

---

UNITED STATES OF AMERICA,
vs.

**HENRY ROSENAU**

# APPEARANCE BOND
## CASE No: CR06-157  MJP

I understand that I may be released from custody, pending further proceedings in this case, on the conditions marked below:

- **Court Appearances.** I must appear in court at the *United States Courthouse, 700 Stewart Street, Seattle, Washington; Courtroom 12B,* on Monday, June 27, 2011 at 9:00 AM and at all other hearings in this case, including turning myself in to begin serving a sentence, should that occasion arise. **I UNDERSTAND THAT A WILLFUL FAILURE TO APPEAR IN COURT AT A TIME SET FOR HEARING IS A SEPARATE CRIMINAL OFFENSE, PUNISHABLE BY UP TO 10 YEARS IMPRISONMENT AND A FINE OF $250,000.**
- **No Law Violations.** I must not commit a federal, state, or local crime during the period of release. I understand that if I commit a felony while on release, my sentence can be increased by a maximum of ten years. If I commit a misdemeanor while on release, my sentence can be increased by a maximum of one year. These sentences would be consecutive to all other applicable sentences.
- **DNA Testing.** I must cooperate in the collection of a DNA sample if the collection is authorized by 42 U.S.C. § 14135a.
- **No Controlled Substances.** I must not use, consume or possess any controlled substances, including medication, unless prescribed by a physician and approved in advance by the Pretrial Services Officer.
- **Address.** I must furnish my attorney, and/or Pretrial Services if supervised, with my current address and telephone number (if any) where I will reside upon release and where I will receive any notices of hearing dates. I must report any changes in that address or telephone number to my attorney, and/or Pretrial Services if supervised, within one business day.
- **Restrictions on Travel.** I must not travel outside the Continental United States or as directed by Pretrial Services
- **Victim and Witness Protection.** I must not harass, threaten, intimidate, tamper with, improperly influence, or injure the person or property of witnesses, jurors, informants, victims of crime, judicial officers, or other persons related to official proceedings before the Court, in violation of 18 U.S.C. § 1503, 1512, and 1513.
- **Pretrial Supervision.** I am subject to Pretrial Services supervision by the Pretrial Services Office of the Court and must abide by such of the general and special conditions of release as that office shall impose. I must report to the Office of Pretrial Services, (206) 370-8950, United States Courthouse, 700 Stewart Street, Seattle, Washington within 24 hours of my release unless released during a weekend or on a holiday in which case I must report at 9:00 a.m. the following court day.

**OTHER SPECIAL CONDITIONS:**

- Travel is restricted to British Columbia, Canada, and the Western District of Washington for court purposes only, or as directed by Pretrial Services.
- Surrender all current and expired passports and travel documents to the court no later than May 18, 2011; if defendant does not have a passport, or cannot find the passport, the defendant must submit an affidavit to affect to his Pretrial Services officer. . Do not apply for/obtain a new passport or travel document from any country without permission of the court. If the surrendered passport is a foreign passport, it shall be forwarded to Immigration and Customs Enforcement if defendant is convicted of an offense, unless otherwise ordered by the Court.
- Maintain residence as directed. Do not change residence without prior approval of Pretrial Services or as directed by Pretrial Services.
- You are prohibited from possessing or having access to firearms and dangerous weapons. All firearms and dangerous weapons must be removed from your residence(s), vehicle(s), and place of employment. This condition operates in conjunction with any restrictions imposed under Title 18, USC 922, and the Washington State Revised Code, Chapter 9.41.
- Maintain employment, or, if unemployed, actively seek employment as directed by Pretrial Services.
- You are financially responsible for the costs of any treatment or testing services obtained in Canada.
- Contact Pretrial Services within 24 hours of your release from custody. Call Pretrial Services weekly as directed. Report to your local community corrections office and comply with all directives of their office. Report to Pretrial Services at the U.S. Customs office in Blaine, Washington, monthly as directed. You shall report to U.S. Pretrial Services any time you enter the Western District of Washington.
- You shall not have direct contact or indirect contact with any existing and/or future co-defendant(s) in this case.
- You shall not have direct contact or indirect contact with any existing and/or future witnesses in this case.
- **Defendant must post with the Clerk of Court all his pilot licenses. No operation of aircraft of any type.**

DETENTION HEARING

Exhibit V

HENRY ROSENAU                                                                CR06-157 MJP

**AGREEMENT BY DEFENDANT:** I understand and agree to comply with every condition marked above, and I understand that if I fail to comply with any conditions of my release, the Court will immediately issue a warrant for my arrest, and I will be subject to a revocation of release, an order of detention, and prosecution for contempt of court.  I understand this appearance bond remains in effect during any proceeding on appeal or review.

X _Henry C Ron_____   **May 4, 2011**_____   **Quesnel, BC, Canada**_____
Signature                          Date Signed              City, State of Residence

---

### ORDER OF RELEASE

It is therefore ORDERED:
(1) Defendant shall comply with all conditions of this appearance Bond;
(2) Defendant shall be released from custody, and shall remain at liberty so long as he or she complies with the provisions of this Appearance Bond, or until further order of the Court.

**May 4, 2011**_____        _____
Date Signed                                        Brian A. Tsuchida
                                                         UNITED STATES MAGISTRATE JUDGE

*cc: Defendant, Defense Counsel, U.S. Attorney, U.S. Marshal, Pretrial Services*