IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

UNITED STATES OF AMERICA, )
Plaintiff, )
vs. ) No. CR 09-2027
JASON LEONARD BOYACEK, )
Defendant. )

APPEARANCES:

PATRICK J. REINERT, ESQ., Assistant United States Attorney, United States Attorney's Office, 111 Seventh Avenue SE, Cedar Rapids, Iowa 52401, on behalf of the Plaintiff.

LEON F. SPIES, ESQ., Mellon & Spies, 312 East College Street, Suite 216, Iowa City, Iowa 52204, on behalf of the Defendant.

DETENTION HEARING HELD BEFORE
THE HONORABLE JON STUART SCOLES,

taken at the Federal Courthouse, 111 Seventh Avenue SE, Cedar Rapids, Iowa, on the 31st day of March, 2015, commencing at 9:57 a.m., reported by Kay C. Carr, Certified Shorthand Reporter in and for the State of Iowa.

Kay C. Carr
Certified Shorthand Reporter
Registered Professional Reporter
Cedar Rapids, Iowa
(319) 362-1543

Case 6:09-cr-02027-MWB-JSS Document 28 Filed 06/05/15 Page 1 of 12

Contact KAY CARR at 319-362-1543 or kaycarr@... to purchase a complete copy of the transcript.

E X H I B I T S

| EXHIBITS | OFFERED | RECEIVED |
|---|---|---|
| GOVERNMENT'S: | | |
| 1 - Letter | 4 | 4 |
| 2 - Letter | 4 | 4 |
| DEFENDANT'S: | | |
| A through V - Not identified | 4 | 4 |



Contact KAY CARR at 319-362-1543 or kaycarr@q.com to purchase a complete copy of the transcript.

THE COURT: The matter now before the Court is the case entitled United States of America versus Jason Leonard Boyacek, No. CR 09-2027. This matter comes on for a detention hearing at this time. The Government is represented by Assistant United States Attorney Patrick Reinert. The defendant appears in court and is represented by Attorney Leon Spies.

This case is set for trial on May 26. The issue before the Court today is whether defendant will be detained pending the trial.

Are the parties prepared to proceed with the hearing at this time?

MR. REINERT: The Government is ready, Your Honor.

MR. SPIES: We are, Your Honor, yes, sir.

THE COURT: Mr. Reinert?

MR. REINERT: Your Honor, I believe Mr. Spies and I agree that there is probable cause to believe that this is the defendant that was sought in this matter and we really want to focus this hearing, I believe, on whether the defendant should be detained or not, and we would suggest that we could rely on the documents that have been previously submitted, so we would offer Government's Exhibits 1 and 2 in that regard.



THE COURT: Any objection to the receipt of Exhibits 1 and 2?

MR. SPIES: No, Your Honor. And I understand the Government has no objection to Defendant's Exhibits A through V as well.

THE COURT: Is that correct?

MR. REINERT: That's correct, Your Honor.

THE COURT: All right. Exhibits 1 and 2 and A through V are received.

(Government's Exhibits 1 and 2 were offered and received in evidence.)

(Defendant's Exhibits A through V were offered and received in evidence.)

THE COURT: Any additional evidence, Mr. Reinert?

MR. REINERT: No, Your Honor.

THE COURT: Mr. Spies, do you have any evidence you would like to offer?

MR. SPIES: The only additional evidence we intend to offer, Your Honor, is by way of proffer. I have been consulting with the General Services Security Corporation out of Minneapolis, Minnesota, and specifically Steve Leopold from the GSSC. Mr. Leopold and the General Services Security Corporation operate a private electronic monitoring business. I have used them in the past in monitoring clients out of state and they've agreed to provide electronic monitoring services for Mr. Boyacek if he is released even to Edmonton, Canada. And by way of proffer, I can say that this would be financed solely by the defendant and his family with arrangements made to him. The General Services Security Corporation report to anyone that the Court wishes should Mr. Boyacek obtain his release.



I do also want to point out that the defendant's mother, Jan Boyachek, is present in the courtroom. She's flown in from Canada to observe these proceedings and to pledge her assistance as she has in her letter, together with her husband, to provide support, supervision for the defendant should he be released.

So that's the only evidence we have, Your Honor, in addition to argument on our position.

THE COURT: Mr. Reinert, you wish to be heard by way of argument?

MR. REINERT: Yes, Your Honor. As noted in Government Exhibit 1, this is a letter produced by the Canadian authorities regarding the extradition process of the defendant. It began in 2010. Ultimately, the defendant was located in 2011 and he has been, as noted in Exhibit 1, vigorously contesting the extradition from then until just a few days ago when he abandoned his claim; ultimately going to the Supreme Court.



As noted in Exhibit 2, if the defendant were to be released and allowed to travel back to Canada, even if a defendant says I voluntarily agree to waive extradition; I voluntarily agree to come back to the United States, that is an unenforceable agreement under Canadian law. So what that means is if a defendant leaves and goes back to Canada, the whole extradition process has to start anew, which means the criminal trial gets put off until 2020; whatever the time period would be to get the extradition process through. So that -- that is a factor.

The ties that the defendant has demonstrated are ties all to Canada. For release within the United States, the defendant has no immigration status in the United States. He was paroled in solely for the purpose of arrest and has to remain in custody. In fact, this morning ICE filed a detainer on him because he has no lawful immigration status in the United States. So either he stays in the custody of the U.S. Marshals or he will be in the custody of the customs and border patrol, so in either event, he would be in custody. And if he's in CBP custody, of course -- or in ICE custody, we don't know exactly where he would



Contact KAY CARR at 319-362-1543 or kaycarr@q.com
to purchase a complete copy of the transcript.

be housed, which actually could complicate the trial in this matter. This is a large scale drug trafficking operation with over a thousand kilos of marijuana charged in the indictment.

So we would suggest that the defendant is a danger. He is a flight risk as well and if he flees to Canada, the odds of getting him back are slim.

THE COURT: Mr. Spies?

MR. SPIES: Thank you, Your Honor. Well, first of all, I think that the defendant's exhibits demonstrate that Mr. Boyacek is neither a danger to the community nor a risk of flight. He has exhibited both to his family, his friends and those who know him well that his efforts to challenge extradition were not frivolous. It was with the advice of counsel and I don't think he should be penalized for exercising his rights as a Canadian citizen in Canadian courts.

The problems that Mr. Reinert has pointed out to the Court are not insurmountable. In fact, there is precedent in this district for the Court to find that an ICE detainer is not an impediment to release. Former Chief Judge -- Chief Magistrate Judge Paul Zoss in United States v. Villanueva-Martinez at 707 F. Supp. 2d 855 found that a detainer issued by the Immigration and Customs Enforcement division was only speculative and in



and of itself is not grounds for denying release to a noncitizen of the United States. Chief Judge Zoss' opinion has been cited numerous times by other courts finding similarly that a detainer does not justify pretrial detention and that there are mechanisms available within the administrative process to obtain bond on that detainer, and that's certainly something we would urge the Court to consider here.

Obviously, we would like to see Mr. Boyacek returned to Canada, and as I said, we're ready to put a monitoring program in place. His family has pledged, his friends have pledged that he's not going to flee; that he's going to take his responsibilities here in the United States seriously.

Alternatively, I think that this Court could also fashion a release provision that would require him to remain in Linn County, Iowa, if we were able to post bond to relieve him from the detainer. Interestingly, he surrendered his passport in Canada at the outset of extradition proceedings there so he has no passport and we would have to go through a process to obtain his lawful remaining in the United States. He voluntarily surrendered his -- his extradition proceedings in Canada; came here with preparations and notice to the United States Government to make sure that his -- his



appearance in court was as expeditious as possible.

We think that a release condition can be fashioned to allow him to stay in the United States but not in custody, to assist in the preparation of his defense and review of the discovery materials which are voluminous in this case.

So all things considered, Your Honor, we believe not only the evidence demonstrates that he has refuted the rebuttable presumption that he's a danger or risk of flight. His family, friends and the General Services Security Corporation stand ready to assure his appearance in court and we believe that a release can be fashioned.

Now, this morning, I offered Defendant's Exhibits U and V, which were a case in the Western -- Division of the Western District of Washington where Henry Rosenau, a Canadian citizen charged with a similar serious drug offense, was permitted release pending trial. Now, I know, of course, in the history of that case that at some point Mr. Rosenau violated the conditions of his release and was taken into custody. But nonetheless, the Court in Washington found a basis for release pending trial. I think that the bond conditions in Government's -- or excuse me -- Defendant's Exhibit V demonstrate just how such a



release could be fashioned.

So in sum, we believe that there -- the administrative impediments that the Government has claimed in this case are not insurmountable; that the Court can find from the exhibits introduced by the defendant that Mr. Boyacek is neither a danger to the community or a risk of flight. He lawfully exercised his rights to challenge extradition as a citizen of Canada and he's prepared to and will honor his obligations to this court.

THE COURT: In determining whether a defendant should be released pending a trial, the Court follows a two step process. The first step is to determine whether detention is authorized. In this case, the defendant is charged in two counts. Count 1 is conspiracy to distribute a thousand kilograms or more of marijuana and Count 2 is money laundering conspiracy and, therefore, detention is authorized under Title 18, United States Code Section 3142(f)(1)(C).

The second step is to determine whether there's any condition or combination of conditions which will reasonably assure the defendant's appearance as required and the safety of the community.

The Government has the burden of proof in this regard. It is aided in this case by a rebuttable



Contact KAYCARR at 319-362-1543 or kaycarr@q.com to purchase a complete copy of the transcript.

11

presumption. That is, if there's probable cause to believe that the defendant has committed a serious drug offense, then there's a rebuttable presumption that he should be detained. That's pursuant to Section 3142(e).

Here, the return of the indictment by the grand jury establishes probable cause to believe the defendant conspired to distribute a thousand kilograms or more of marijuana and, therefore, there is a rebuttable presumption that he should be detained.

Now, that places the burden of production on the defendant, but the burden of persuasion remains on the Government, and the factors which the Court must consider are set forth in Section 3142(g).

They include the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug or minor victim or a firearm. Here, as I've indicated, one of the charges involves distribution of marijuana.

The Court's also required to consider the weight of the evidence. Here, no testimony was offered and, therefore, the Court obviously has no opinion as to the weight of the evidence.

The Court's also required to consider the history and characteristics of the defendant, including the defendant's character, physical and mental

12

condition, family ties, employment, financial resources and ties to the community. This information is found in the Pretrial Services Report.

The defendant is 41 years old. He was born in Manitoba, Canada. He has lived in Canada all of his life except for three years or two or three years that he indicated he lived in Chicago from 2003 to 2005. His parents continue to reside in Canada. He has a brother and a sister, both of whom live in Canada.

He has never been married and has no children. He is engaged to Hara Nikolopoulos and has been in a relationship for four years. She resides in Canada. Apparently, the defendant was living with his parents prior to surrendering himself earlier this month; however, if released, he would return to Canada and live with his fiancee and she has indicated that he is welcome to reside with her.

The defendant has not been employed since 2009. He told the pretrial services officer that he supports himself by doing occasional work for construction companies and day trading stocks.

The defendant is in good physical health. He has no history of mental health -- well, strike that. He has been treated for anxiety back between 2007 and 2009.

13

The Court's also required to consider the defendant's past conduct, including history relating to drug or alcohol abuse, criminal history and record concerning appearances at court proceedings.

The defendant told the pretrial services officer that he tried marijuana in high school, but denied that he has ever abused alcohol or other controlled substances. The defendant has no prior criminal record and, therefore, there's no indication he's ever failed to appear for a court proceeding.

The Court's required to consider whether at the time of the current offense or arrest, the defendant was on probation, parole or other pretrial release. Again, there's no indication defendant was on any sort of probation, parole or other pretrial release at the time of these events, which allegedly occurred between 2005 and 2007.

And finally, the Court's required to consider the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. I don't think that the defendant's release would constitute any particular danger to this community or to any community in Canada. I have reviewed the defendant's exhibits. The Court notes that the defendant has been under supervision in

14

British Columbia since October of 2011 and apparently has been compliant. I've also read the numerous letters indicating that defendant, in the opinion of the writers, is an upstanding citizen. He has no convictions for any violent offenses; haven't heard any testimony today that these offenses involved any threatened or actual violence, so I don't believe the defendant's a danger to the community.

The issue then is whether or not there are any conditions or combinations of conditions which will reasonably assure the defendant's appearance as required. Now, if the defendant were not a citizen of Canada and if he had ties to this community, it's likely that he would be released. But obviously in this case, the complicating factor is that the defendant has no ties to this community, is a citizen of Canada and apparently would intend to return to Canada.

I would note that his remaining in the United States has all kinds of complications associated with it. I -- I don't believe that the mere fact that there's an ICE detainer prevents this Court from ordering his release in this criminal proceeding. That is, I agree that I make a decision as to whether defendant is detained for purposes of this criminal proceeding and immigration authorities make a decision


Contact KAY CARR at 319-362-1549 or kaycarr@q.com
to purchase a complete copy of the transcript.

as to whether he would be released for their purposes, and I have, in fact, ordered in certain cases -- relatively rare cases that a defendant be released when I'm convinced that he's not a risk of flight; notwithstanding the fact that there's an ICE detainer, and it's my understanding that at least in some of those cases, he subsequently has negotiated his release from the ICE detainer. So I don't think the ICE detainer is -- prevents me from ordering his release.

However, if I ordered his release he would, in fact, remain in custody except instead of being in the marshal's custody, he would be in ICE custody and as -- and I obviously don't have any authority to tell immigration officials what they should or shouldn't do, so he may well remain in ICE custody. As Mr. Reinert points out, there's no guarantee as to where ICE officials may decide to hold him and that may complicate trial preparation.

If he were somehow able to negotiate his release from detention by the ICE officials, as Mr. Spies points out, in order to remain in the United States, he would likely require a passport. Frankly, I'm not sure -- this would be such a unique circumstance, I'm not exactly sure how that would work with respect to obtaining a passport. But more



problematically, if he obtained a passport, then that would allow him to cross international borders and return to Canada or theoretically go anyplace else he wanted to go, which brings me to the issue of his returning to Canada.

If I release him and if he somehow negotiates his release from ICE detention and if he returns to Canada, getting him back to the United States is problematic. This case began with the return of the indictment in September of 2009. According to Exhibit 1, the extradition was initially requested in August of 2010. Defendant was not located and arrested until January of 2011, but since that time, he has vigorously contested his return to the United States to answer to these charges.

The history of this case is detailed in the Court of Appeals decision that was, I think, entered in November of last year and is attached to Exhibit 1. As I understand it, the defendant appealed that decision to the Canadian Supreme Court and it was not until just a few weeks ago that the defendant then discontinued his appeal and surrendered himself for return to the United States.

Now, the defendant may well be telling the truth that if he were allowed to go back to Canada, he



would return in a month for the final pretrial conference or status conference and he would return a month after that for the trial. Or he may be telling the truth, but when he gets back to Canada and starts considering the possibility that he could be convicted and spend a substantial amount of time in federal prison, he may change his mind about his willingness to return. Or he may be lying altogether and has no intention to return, but -- to the United States, but instead intends to restart the clock with respect to extradition.

As documented in the exhibits, the extradition process has taken a substantial length of time -- three-and-a-half years I guess from the time of his arrest -- and it took some time to locate him.

Incidentally, I would note parenthetically that I do use GPS monitoring from time to time, but frankly, that's -- it's -- if a defendant is inclined to flee or fail to appear, it's a relatively easy process to simply snip off the anklet and away he goes. And notwithstanding the good intentions of this private monitoring service, if the defendant returns to Canada and has some sort of anklet and snips it off and takes off to, you know, Timbuktu, the -- the private monitoring service doesn't do much good.



According to the Exhibits 1 and 2, which are both authored by the same individual; they're authored by Janet Henchey, who is identified as director general and senior general counsel of the International Assistance Group, Litigation Branch, of the Canadian Department of Justice. Exhibit 2 is a letter dated July 17 of last year and then Exhibit 1 is a cover letter that was just dated yesterday.

In those letters, Ms. Henchey describes the extradition process under Canadian law. In the letter sent last July, she was either asked or anticipated the possibility that a Canadian resident would be released here in the United States following extradition and returned to -- and permitted to return to Canada with a promise that he then come back to the United States for court proceedings and I'll just read the last paragraph of -- of Exhibit 2 here.

It says, "If a person were to purport to enter into an anticipatory waiver of extradition as a condition of their bail on charges in a foreign state and then reneged on that undertaking upon arrival in Canada, there would be no mechanism in Canadian law to enforce the undertaking. An anticipatory waiver is not contemplated by the act. Indeed, the lack of express statutory authority to enforce a prior undertaking to



Contact KAY CARR at 319-362-1545 or kay.carr@...com
to purchase a complete copy of the transcript.

19

waive extradition would likely lead to extensive litigation in Canadian courts. Of course, whether a person accused or convicted of a crime outside of Canada can be trusted to honor the bail terms established by the foreign court is primarily an issue between that person and the foreign court."

And Ms. Henchey repeats those sentiments in her letter dated yesterday. She notes that the defendant vigorously contested his extradition. She notes that the extradition hearing took place over nearly two years and that there was an appeal, and that following an unsuccessful appeal, the defendant appealed to the Supreme Court of Canada and then finally surrendered himself to the United States authorities on March 26, more than three-and-a-half years after his arrest on the extradition warrant.

Ms. Henchey opines in her most recent letter that the process of engaging a second extradition proceeding would likely take several years and would require substantial resources to complete.

Now, again, it may well be that the defendant is being truthful and acting in good faith when he says I'll come back if you let me go. If you let me go home, I'll come back, but there's nothing to prevent him from simply changing his mind, and if he

20

does, it results in the possibility of substantial lengthy expensive litigation in order get back to where we're at here today.

I would note that Count 1 charges the defendant with conspiracy to distribute a thousand kilograms or more of marijuana. If I understand it correctly, if the defendant is convicted of the offense as charged, he faces a mandatory minimum 10 years in prison and he could be sent to prison for life.

So again, even if he's acting in good faith today, when he gets back to Canada and starts contemplating the idea of 10 years in a federal prison in the United States, if he simply changed his mind, there's no easy remedy for that other than to start over again with the same process that we've already gone through or the Canadian authorities have gone through rather painstakingly.

So in summary, I start with the proposition that there is a rebuttable presumption that the defendant should be detained. I have considered the fact in -- that there's a mandatory minimum 10 year prison term here if the defendant is convicted, which I think is relevant to the issue of whether he will appear. And then I add to that the obvious fact that the defendant is a Canadian citizen and if he returns to

21

Canada, the only way to get him back unless he voluntarily returns is to go through an extradition proceeding, which the first time around took three-and-a-half years.

Based on all of those circumstances, the Court concludes that there is no condition or combination of conditions which will reasonably assure the defendant's appearance as required if he were released in this case. Therefore, Mr. Boyacek, I'm ordering that you be detained pending the trial in this matter.

You do have the right to appeal my decision by filing a motion for review by Chief Judge Linda Reade and Mr. Spies can advise you on how that's done.

Is there anything else we need to talk about, Mr. Reinert?

MR. REINERT: No, Your Honor.

THE COURT: Mr. Spies?

MR. SPIES: Not at this time. Thank you.

THE COURT: That will conclude the hearing.

(Proceedings concluded at 10:25 a.m.)

22

C E R T I F I C A T E

I, Kay C. Carr, a Certified Shorthand Reporter of the State of Iowa, do hereby certify that I acted as the official court reporter at the proceedings in the above-entitled matter at the time and place indicated.

That I reported in shorthand all of the proceedings had at the said time and place and that said shorthand notes were reduced to print by means of a computer-aided transcription device under my direction and supervision, and that the foregoing typewritten pages are a full and complete transcript of the shorthand notes so taken.

I further certify that I am not related to or employed by any of the parties to this proceeding, and further that I am not a relative or employee of any attorney of counsel employed by the parties hereto or financially interested in the action.

IN WITNESS WHEREOF, I have set my hand this 31st day of May, 2015.

/s/ Kay C. Carr
Kay C. Carr
Certified Shorthand Reporter
Registered Professional Reporter
Cedar Rapids, Iowa
(319) 362-1543


Contact KAY CARR at 319-362-1543 or kaycarr@aol.com to purchase a complete copy of the transcript.

## 0

**09-2027** [1] - 3:3

## 1

**1** [13] - 2:4, 3:24, 4:2, 4:8, 4:10, 5:21, 5:25, 10:15, 16:11, 16:18, 18:1, 18:7, 20:4
**10** [3] - 20:8, 20:12, 20:21
**10:25** [1] - 21:21
**17** [1] - 18:7
**18** [1] - 10:18

## 2

**2** [10] - 2:5, 3:24, 4:2, 4:8, 4:10, 6:3, 10:17, 18:1, 18:6, 18:17
**2003** [1] - 12:7
**2005** [2] - 12:7, 13:17
**2007** [2] - 12:24, 13:17
**2009** [3] - 12:19, 12:25, 16:10
**2010** [2] - 5:23, 16:12
**2011** [3] - 5:24, 14:1, 16:13
**2020** [1] - 6:11
**26** [2] - 3:8, 19:15
**2d** [1] - 7:23

## 3

**3142(e)** [1] - 11:4
**3142(f)(1)(C)** [1] - 10:19
**3142(g)** [1] - 11:13

## 4

**4** [6] - 2:4, 2:5, 2:9
**41** [1] - 12:4

## 7

**707** [1] - 7:23

## 8

**855** [1] - 7:24

## A

**a.m** [1] - 21:21
**abandoned** [1] - 6:1
**able** [2] - 8:17, 15:19
**abuse** [1] - 13:3
**abused** [1] - 13:7
**according** [2] - 16:10, 18:1
**accused** [1] - 19:3
**act** [1] - 18:24
**acting** [2] - 19:22, 20:10
**actual** [1] - 14:7
**add** [1] - 20:24
**addition** [1] - 5:17
**additional** [2] - 4:14, 4:19
**administrative** [2] - 8:6, 10:3
**advice** [1] - 7:15
**advise** [1] - 21:14
**ago** [2] - 6:1, 16:21
**agree** [4] - 3:18, 6:5, 6:6, 14:23
**agreed** [1] - 5:2
**agreement** [1] - 6:7
**aided** [1] - 10:25
**alcohol** [2] - 13:3, 13:7
**allegedly** [1] - 13:16
**allow** [2] - 9:3, 16:2
**allowed** [2] - 6:4, 16:25
**alternatively** [1] - 8:15
**altogether** [1] - 17:8
**America** [1] - 3:2
**amount** [1] - 17:6
**anew** [1] - 6:10
**anklet** [2] - 17:20, 17:23
**answer** [1] - 16:15
**anticipated** [1] - 18:11
**anticipatory** [2] - 18:19, 18:23
**anxiety** [1] - 12:24
**anyplace** [1] - 16:3
**appeal** [4] - 16:22, 19:11, 19:12, 21:12
**appealed** [2] - 16:19, 19:12
**Appeals** [1] - 16:17
**appear** [3] - 13:10, 17:19, 20:24
**appearance** [5] - 9:1, 9:12, 10:22, 14:11, 21:8
**appearances** [1] - 13:4
**argument** [2] - 5:17, 5:19
**arrangements** [1] - 5:6
**arrest** [4] - 6:18, 13:12, 17:15, 19:16
**arrested** [1] - 16:12
**arrival** [1] - 18:21
**assist** [1] - 9:4
**assistance** [1] - 5:12
**Assistance** [1] - 18:5
**Assistant** [1] - 3:5
**associated** [1] - 14:19
**assure** [4] - 9:11, 10:22, 14:11, 21:7
**attached** [1] - 16:18
**Attorney** [2] - 3:6, 3:7
**August** [1] - 16:12
**authored** [2] - 18:2
**authorities** [4] - 5:22, 14:25, 19:14, 20:16
**authority** [2] - 15:13, 18:25
**authorized** [2] - 10:14, 10:18
**available** [1] - 8:6

## B

**bail** [2] - 18:20, 19:4
**based** [1] - 21:5
**basis** [1] - 9:22
**began** [2] - 5:23, 16:9
**between** [3] - 12:24, 13:16, 19:5
**bond** [3] - 8:7, 8:18, 9:23
**border** [1] - 6:23
**borders** [1] - 16:2
**born** [1] - 12:4
**Boyacek** [7] - 3:3, 5:3, 5:8, 7:11, 8:9, 10:6, 21:9
**Boyachek** [1] - 5:10
**Branch** [1] - 18:5
**brings** [1] - 16:4
**British** [1] - 14:1
**brother** [1] - 12:8
**burden** [3] - 10:24, 11:10, 11:11
**business** [1] - 4:25

## C

**Canada** [32] - 5:4, 5:11, 6:4, 6:9, 6:15, 7:7, 8:10, 8:19, 8:24, 10:9, 12:5, 12:8, 12:9, 12:13, 12:15, 13:23, 14:13, 14:16, 14:17, 16:3, 16:5, 16:8, 16:25, 17:4, 17:22, 18:14, 18:22, 19:3, 19:13, 20:11, 21:1
**Canadian** [13] - 5:22, 6:8, 7:17, 9:17, 16:20, 18:5, 18:10, 18:12, 18:22, 19:2, 20:16, 20:25
**case** [12] - 3:2, 3:8, 9:6, 9:15, 9:20, 10:4, 10:15, 10:25, 14:14, 16:9, 16:16, 21:9
**cases** [3] - 15:2, 15:3, 15:7
**CBP** [1] - 6:24
**certain** [1] - 15:2
**certainly** [1] - 8:7
**challenge** [2] - 7:14, 10:8
**change** [1] - 17:7
**changed** [1] - 20:13
**changing** [1] - 19:25
**character** [1] - 11:25
**characteristics** [1] - 11:24
**charged** [5] - 7:4, 9:17, 10:15, 11:15, 20:8
**charges** [4] - 11:18, 16:15, 18:20, 20:4
**Chicago** [1] - 12:7
**Chief** [4] - 7:22, 8:2, 21:13
**children** [1] - 12:11
**circumstance** [1] - 15:24
**circumstances** [2] - 11:14, 21:5
**cited** [1] - 8:3
**citizen** [7] - 7:17, 9:17, 10:8, 14:4, 14:12, 14:16, 20:25
**claim** [1] - 6:2
**claimed** [1] - 10:4
**clients** [1] - 5:1
**clock** [1] - 17:10
**Code** [1] - 10:19
**Columbia** [1] - 14:1
**combination** [2] - 10:21, 21:7
**combinations** [1] - 14:10
**committed** [1] - 11:2
**community** [10] - 7:12, 10:7, 10:23, 12:2, 13:20, 13:23, 14:8, 14:13, 14:16
**companies** [1] - 12:21
**complete** [1] - 19:20
**compliant** [1] - 14:2
**complicate** [2] - 7:1, 15:17
**complicating** [1] - 14:15
**complications** [1] - 14:19
**concerning** [1] - 13:4
**conclude** [1] - 21:20
**concluded** [1] - 21:21
**concludes** [1] - 21:6
**condition** [5] - 9:2, 10:21, 12:1, 18:20, 21:6
**conditions** [6] - 9:21, 9:24, 10:21, 14:10, 21:7
**conduct** [1] - 13:2
**conference** [2] - 17:2
**consider** [7] - 8:8, 11:13, 11:19, 11:23, 13:1, 13:11, 13:19
**considered** [2] - 9:7, 20:20
**considering** [1] - 17:5
**conspiracy** [3] - 10:16, 10:17, 20:5
**conspired** [1] - 11:7
**constitute** [1] - 13:22
**construction** [1] - 12:21
**consulting** [1] - 4:21
**contemplated** [1] - 18:24
**contemplating** [1] - 20:12
**contested** [2] - 16:14, 19:9
**contesting** [1] - 5:25
**continue** [1] - 12:8
**controlled** [1] - 13:8
**convicted** [4] - 17:5, 19:3, 20:7, 20:22
**convictions** [1] - 14:5
**convinced** [1] - 15:4


Contact KAY CARR at 319-362-1540 or kaycarr@q.com to purchase a complete copy of the transcript.

**Corporation** [4] - 4:22, 4:24, 5:7, 9:11
**correct** [2] - 4:6, 4:7
**correctly** [1] - 20:7
**counsel** [2] - 7:15, 18:4
**Count** [3] - 10:15, 10:17, 20:4
**counts** [1] - 10:15
**County** [1] - 8:17
**course** [3] - 6:24, 9:19, 19:2
**COURT** [12] - 3:1, 3:16, 4:1, 4:6, 4:8, 4:14, 4:17, 5:18, 7:8, 10:11, 21:18, 21:20
**Court** [19] - 3:1, 3:9, 5:7, 6:2, 7:19, 7:20, 8:8, 8:15, 9:22, 10:5, 10:12, 11:12, 11:21, 13:24, 14:21, 16:17, 16:20, 19:13, 21:6
**court** [9] - 3:7, 9:1, 9:12, 10:10, 13:4, 13:10, 18:16, 19:5, 19:6
**Court's** [5] - 11:19, 11:23, 13:1, 13:11, 13:18
**courtroom** [1] - 5:11
**courts** [3] - 7:17, 8:3, 19:2
**cover** [1] - 18:7
**CR** [1] - 3:3
**crime** [2] - 11:16, 19:3
**criminal** [5] - 6:10, 13:3, 13:9, 14:22, 14:24
**cross** [1] - 16:2
**current** [1] - 13:12
**custody** [12] - 6:18, 6:21, 6:22, 6:24, 6:25, 9:4, 9:21, 15:11, 15:12, 15:15
**Customs** [1] - 7:25
**customs** [1] - 6:23

## D

**danger** [7] - 7:6, 7:11, 9:9, 10:6, 13:19, 13:22, 14:8
**dated** [3] - 18:6, 18:8, 19:8
**days** [1] - 6:1
**decide** [1] - 15:17
**decision** [5] - 14:23, 14:25, 16:17, 16:19, 21:12
**defendant** [49] - 3:6, 3:9, 3:19, 3:21, 5:5, 5:14, 5:23, 5:24, 6:3, 6:5, 6:8, 6:14, 6:16, 7:5, 10:6, 10:12, 10:15, 11:2, 11:7, 11:11, 11:24, 12:4, 12:13, 12:18, 12:22, 13:5, 13:8, 13:12, 13:14, 13:25, 14:3, 14:12, 14:15, 14:24, 15:3, 16:12, 16:19, 16:21, 16:24, 17:18, 17:22, 19:9, 19:12, 19:22, 20:5, 20:7, 20:20, 20:22, 20:25
**Defendant's** [4] - 4:5, 4:12, 9:14, 9:25
**DEFENDANT'S** [1] - 2:8
**defendant's** [11] - 5:10, 7:10, 10:22, 11:25, 13:2, 13:21, 13:24, 14:8, 14:11, 21:8
**defense** [1] - 9:5
**demonstrate** [2] - 7:11, 9:25
**demonstrated** [1] - 6:14
**demonstrates** [1] - 9:8
**denied** [1] - 13:7
**denying** [1] - 8:1
**Department** [1] - 18:6
**describes** [1] - 18:9
**detailed** [1] - 16:16
**detained** [7] - 3:10, 3:21, 11:4, 11:9, 14:24, 20:20, 21:10
**detainer** [10] - 6:19, 7:21, 7:24, 8:4, 8:7, 8:18, 14:21, 15:5, 15:8
**detention** [6] - 3:4, 8:5, 10:14, 10:18, 15:20, 16:7
**determine** [2] - 10:14, 10:20
**determining** [1] - 10:11
**director** [1] - 18:3
**discontinued** [1] - 16:21
**discovery** [1] - 9:5
**distribute** [3] - 10:16, 11:7, 20:5
**distribution** [1] - 11:18
**district** [1] - 7:20
**District** [1] - 9:16
**division** [1] - 7:25
**Division** [1] - 9:16
**documented** [1] - 17:12
**documents** [1] - 3:23
**done** [1] - 21:14
**drug** [5] - 7:2, 9:18, 11:2, 11:16, 13:3

## E

**easy** [2] - 17:19, 20:14
**Edmonton** [1] - 5:3
**efforts** [1] - 7:14
**either** [3] - 6:21, 6:23, 18:11
**electronic** [2] - 4:25, 5:2
**employed** [1] - 12:18
**employment** [1] - 12:1
**enforce** [2] - 18:23, 18:25
**Enforcement** [1] - 7:25
**engaged** [1] - 12:11
**engaging** [1] - 19:18
**enter** [1] - 18:19
**entered** [1] - 16:17
**entitled** [1] - 3:2
**established** [1] - 19:4
**establishes** [1] - 11:6
**event** [1] - 6:23
**events** [1] - 13:16
**evidence** [9] - 4:11, 4:13, 4:14, 4:18, 4:19, 5:16, 9:8, 11:20, 11:22
**exactly** [2] - 6:25, 15:24
**except** [2] - 12:6, 15:11
**excuse** [1] - 9:24
**exercised** [1] - 10:7
**exercising** [1] - 7:16
**Exhibit** [9] - 5:21, 5:25, 6:3, 9:25, 16:11, 16:18, 18:6, 18:7, 18:17
**exhibited** [1] - 7:12
**Exhibits** [7] - 3:24, 4:2, 4:5, 4:10, 4:12, 9:15, 18:1
**EXHIBITS** [1] - 2:2
**exhibits** [5] - 4:8, 7:10, 10:5, 13:24, 17:12
**expeditious** [1] - 9:1
**expensive** [1] - 20:2
**express** [1] - 18:24
**extensive** [1] - 19:1
**extradition** [21] - 5:22, 5:25, 6:6, 6:9, 6:12, 7:14, 8:20, 8:23, 10:8, 16:11, 17:11, 17:13, 18:10, 18:13, 18:19, 19:1, 19:9, 19:10, 19:16, 19:18, 21:2

## F

**faces** [1] - 20:8
**fact** [8] - 6:19, 7:19, 14:20, 15:2, 15:5, 15:11, 20:21, 20:24
**factor** [2] - 6:13, 14:15
**factors** [1] - 11:12
**fail** [1] - 17:19
**failed** [1] - 13:10
**faith** [2] - 19:22, 20:10
**family** [5] - 5:5, 7:13, 8:11, 9:10, 12:1
**fashion** [1] - 8:16
**fashioned** [3] - 9:3, 9:13, 10:1
**federal** [2] - 17:6, 20:12
**few** [2] - 6:1, 16:21
**fiance** [1] - 12:16
**filed** [1] - 6:19
**filing** [1] - 21:13
**final** [1] - 17:1
**finally** [2] - 13:18, 19:13
**financed** [1] - 5:5
**financial** [1] - 12:1
**firearm** [1] - 11:17
**first** [3] - 7:10, 10:13, 21:3
**flee** [2] - 8:12, 17:19
**flees** [1] - 7:6
**flight** [5] - 7:6, 7:12, 9:10, 10:7, 15:4
**flown** [1] - 5:11
**focus** [1] - 3:20
**following** [2] - 18:13, 19:12
**follows** [1] - 10:13
**foreign** [3] - 18:20, 19:5, 19:6
**former** [1] - 7:21
**forth** [1] - 11:13
**four** [1] - 12:12
**frankly** [2] - 15:23, 17:18
**friends** [3] - 7:13, 8:12, 9:10
**frivolous** [1] - 7:15

## G

**general** [2] - 18:3, 18:4
**General** [4] - 4:21, 4:24, 5:6, 9:10
**Government** [8] - 3:5, 3:13, 4:4, 5:21, 8:25, 10:3, 10:24, 11:12
**GOVERNMENT'S** [1] - 2:3
**Government's** [3] - 3:24, 4:10, 9:24
**GPS** [1] - 17:17
**grand** [1] - 11:6
**grounds** [1] - 8:1
**Group** [1] - 18:5
**GSSC** [1] - 4:23
**guarantee** [1] - 15:16
**guess** [1] - 17:14

## H

**half** [3] - 17:14, 19:15, 21:4
**Hara** [1] - 12:11
**health** [2] - 12:22, 12:23
**heard** [2] - 5:19, 14:5
**hearing** [5] - 3:4, 3:12, 3:20, 19:10, 21:20
**Henchey** [4] - 18:3, 18:9, 19:7, 19:17
**Henry** [1] - 9:17
**high** [1] - 13:6
**himself** [4] - 12:14, 12:20, 16:22, 19:14
**history** [6] - 9:19, 11:24, 12:23, 13:2, 13:3, 16:16
**hold** [1] - 15:17
**home** [1] - 19:24
**Honor** [12] - 3:14, 3:15, 3:17, 4:3, 4:7, 4:16, 4:20, 5:17, 5:20, 7:9, 9:7, 21:17
**honor** [2] - 10:9, 19:4
**housed** [1] - 7:1
**husband** [1] - 5:13

## I

**ICE** [12] - 6:19, 6:25, 7:21, 14:21, 15:5, 15:8, 15:12, 15:15, 15:16, 15:20, 16:7


Contact KAY CHRT at 319-362-1548 or kay@...com to purchase a complete copy of the transcript.

**idea** [1] - 20:12
**identified** [2] - 2:9, 18:3
**immigration** [4] - 6:16, 6:20, 14:25, 15:14
**Immigration** [1] - 7:24
**impediment** [1] - 7:21
**impediments** [1] - 10:3
**incidentally** [1] - 17:16
**inclined** [1] - 17:18
**include** [1] - 11:14
**including** [3] - 11:15, 11:24, 13:2
**indeed** [1] - 18:24
**indicated** [3] - 11:17, 12:7, 12:16
**indicating** [1] - 14:3
**indication** [2] - 13:9, 13:14
**indictment** [3] - 7:4, 11:5, 16:10
**individual** [1] - 18:2
**information** [1] - 12:2
**instead** [2] - 15:11, 17:10
**insurmountable** [2] - 7:19, 10:4
**intend** [2] - 4:20, 14:17
**intends** [1] - 17:10
**intention** [1] - 17:9
**intentions** [1] - 17:21
**interestingly** [1] - 8:18
**International** [1] - 18:4
**international** [1] - 16:2
**introduced** [1] - 10:5
**involved** [1] - 14:6
**involves** [2] - 11:16, 11:18
**Iowa** [1] - 8:17
**issue** [5] - 3:9, 14:9, 16:4, 19:5, 20:23
**issued** [1] - 7:24
**itself** [1] - 8:1

## J

**Jan** [1] - 5:10
**Janet** [1] - 18:3
**January** [1] - 16:13
**Jason** [1] - 3:3
**Judge** [4] - 7:22, 8:2, 21:13
**July** [2] - 18:7, 18:11
**jury** [1] - 11:6
**Justice** [1] - 18:6
**justify** [1] - 8:4

## K

**kilograms** [3] - 10:16, 11:7, 20:6
**kilos** [1] - 7:3
**kinds** [1] - 14:19

## L

**lack** [1] - 18:24
**large** [1] - 7:2
**last** [4] - 16:18, 18:7, 18:11, 18:16
**laundering** [1] - 10:17
**law** [3] - 6:8, 18:10, 18:22
**lawful** [2] - 6:20, 8:22
**lawfully** [1] - 10:7
**lead** [1] - 19:1
**least** [1] - 15:6
**leaves** [1] - 6:9
**length** [1] - 17:13
**lengthy** [1] - 20:2
**Leon** [1] - 3:7
**Leonard** [1] - 3:3
**Leopold** [2] - 4:23
**Letter** [2] - 2:4, 2:5
**letter** [7] - 5:13, 5:21, 18:6, 18:8, 18:10, 19:8, 19:17
**letters** [2] - 14:2, 18:9
**life** [2] - 12:6, 20:9
**likely** [4] - 14:13, 15:22, 19:1, 19:19
**Linda** [1] - 21:13
**Linn** [1] - 8:17
**litigation** [2] - 19:2, 20:2
**Litigation** [1] - 18:5
**live** [2] - 12:9, 12:16
**lived** [2] - 12:5, 12:7
**living** [1] - 12:13
**locate** [1] - 17:15
**located** [2] - 5:24, 16:12
**lying** [1] - 17:8

## M

**Magistrate** [1] - 7:22
**mandatory** [2] - 20:8, 20:21
**Manitoba** [1] - 12:5
**March** [1] - 19:15
**marijuana** [6] - 7:3, 10:17, 11:8, 11:18, 13:6, 20:6
**married** [1] - 12:10
**marshal's** [1] - 15:12
**Marshals** [1] - 6:22
**Martinez** [1] - 7:23
**materials** [1] - 9:5
**matter** [5] - 3:1, 3:3, 3:20, 7:2, 21:11
**means** [2] - 6:8, 6:10
**mechanism** [1] - 18:22
**mechanisms** [1] - 8:5
**mental** [2] - 11:25, 12:23
**mere** [1] - 14:20
**mind** [3] - 17:7, 19:25, 20:13
**minimum** [2] - 20:8, 20:21
**Minneapolis** [1] - 4:22
**Minnesota** [1] - 4:22
**minor** [1] - 11:16
**money** [1] - 10:17
**monitoring** [7] - 4:25, 5:1, 5:2, 8:11, 17:17, 17:22, 17:25
**month** [3] - 12:15, 17:1, 17:3
**morning** [2] - 6:19, 9:14
**most** [1] - 19:17
**mother** [1] - 5:10
**motion** [1] - 21:13
**MR** [11] - 3:13, 3:15, 3:17, 4:3, 4:7, 4:16, 4:19, 5:20, 7:9, 21:17, 21:19
**must** [1] - 11:12

## N

**narcotic** [1] - 11:16
**nature** [2] - 11:14, 13:19
**nearly** [1] - 19:11
**need** [1] - 21:15
**negotiate** [1] - 15:19
**negotiated** [1] - 15:7
**negotiates** [1] - 16:7
**never** [1] - 12:10
**Nikolopoulos** [1] - 12:11
**noncitizen** [1] - 8:2
**nonetheless** [1] - 9:22
**note** [3] - 14:18, 17:16, 20:4
**noted** [3] - 5:20, 5:24, 6:3
**notes** [3] - 13:24, 19:8, 19:10
**nothing** [1] - 19:24
**notice** [1] - 8:24
**notwithstanding** [2] - 15:5, 17:21
**November** [1] - 16:18
**numerous** [2] - 8:3, 14:2

## O

**objection** [2] - 4:1, 4:4
**obligations** [1] - 10:10
**observe** [1] - 5:11
**obtain** [3] - 5:8, 8:6, 8:21
**obtained** [1] - 16:1
**obtaining** [1] - 15:25
**obvious** [1] - 20:24
**obviously** [4] - 8:9, 11:21, 14:14, 15:13
**occasional** [1] - 12:20
**occurred** [1] - 13:16
**October** [1] - 14:1
**odds** [1] - 7:7
**offense** [6] - 9:18, 11:3, 11:15, 13:12, 20:7
**offenses** [2] - 14:5, 14:6
**offer** [3] - 3:24, 4:18, 4:20
**offered** [4] - 4:11, 4:13, 9:14, 11:20
**OFFERED** [1] - 2:2
**officer** [2] - 12:19, 13:6
**officials** [3] - 15:14, 15:17, 15:20
**old** [1] - 12:4
**one** [1] - 11:17
**operate** [1] - 4:24
**operation** [1] - 7:3
**opines** [1] - 19:17
**opinion** [3] - 8:3, 11:21, 14:3
**order** [2] - 15:21, 20:2
**ordered** [2] - 15:2, 15:10
**ordering** [3] - 14:22, 15:9, 21:10
**outset** [1] - 8:19
**outside** [1] - 19:3

## P

**painstakingly** [1] - 20:17
**paragraph** [1] - 18:16
**parenthetically** [1] - 17:16
**parents** [2] - 12:8, 12:14
**parole** [2] - 13:13, 13:15
**paroled** [1] - 6:17
**particular** [1] - 13:22
**parties** [1] - 3:11
**passport** [5] - 8:19, 8:20, 15:22, 15:25, 16:1
**past** [2] - 5:1, 13:2
**Patrick** [1] - 3:6
**patrol** [1] - 6:23
**Paul** [1] - 7:22
**penalized** [1] - 7:16
**pending** [5] - 3:10, 9:18, 9:23, 10:12, 21:10
**period** [1] - 6:11
**permitted** [2] - 9:18, 18:14
**person** [4] - 13:20, 18:18, 19:3, 19:6
**persuasion** [1] - 11:11
**physical** [2] - 11:25, 12:22
**place** [2] - 8:11, 19:10
**places** [1] - 11:10
**pledge** [1] - 5:12
**pledged** [2] - 8:11, 8:12
**point** [2] - 5:9, 9:20
**pointed** [1] - 7:18
**points** [2] - 15:16, 15:21
**posed** [1] - 13:20
**position** [1] - 5:17
**possibility** [3] - 17:5, 18:12, 20:1
**possible** [1] - 9:1
**post** [1] - 8:17
**precedent** [1] - 7:20
**preparation** [2] - 9:4, 15:18
**preparations** [1] - 8:24
**prepared** [2] - 3:11, 10:9
**present** [1] - 5:10
**presumption** [5] - 9:9,


Contact KAY CARR at 319-362-1518 or kaycarr@aol.com to purchase a complete copy of the transcript.

11:1, 11:3, 11:9, 20:19
**Pretrial** [1] - 12:3
**pretrial** [6] - 8:5, 12:19, 13:5, 13:13, 13:15, 17:1
**prevent** [1] - 19:25
**prevents** [2] - 14:21, 15:9
**previously** [1] - 3:23
**primarily** [1] - 19:5
**prison** [5] - 17:7, 20:9, 20:12, 20:22
**private** [3] - 4:25, 17:21, 17:24
**probable** [3] - 3:18, 11:1, 11:6
**probation** [2] - 13:13, 13:15
**problematic** [1] - 16:9
**problematically** [1] - 16:1
**problems** [1] - 7:18
**proceed** [1] - 3:11
**proceeding** [5] - 13:10, 14:22, 14:25, 19:19, 21:3
**Proceedings** [1] - 21:21
**proceedings** [5] - 5:12, 8:20, 8:23, 13:4, 18:16
**process** [11] - 5:22, 6:10, 6:12, 8:6, 8:21, 10:13, 17:13, 17:19, 18:10, 19:18, 20:15
**produced** [1] - 5:21
**production** [1] - 11:10
**proffer** [2] - 4:20, 5:4
**program** [1] - 8:11
**promise** [1] - 18:15
**proof** [1] - 10:24
**proposition** [1] - 20:18
**provide** [2] - 5:2, 5:13
**provision** [1] - 8:16
**purport** [1] - 18:18
**purpose** [1] - 6:18
**purposes** [2] - 14:24, 15:1
**pursuant** [1] - 11:4
**put** [2] - 6:11, 8:10

R

**rare** [1] - 15:3
**rather** [1] - 20:17
**read** [2] - 14:2, 18:16
**Reade** [1] - 21:13
**ready** [3] - 3:13, 8:10, 9:11
**really** [1] - 3:20
**reasonably** [3] - 10:22, 14:11, 21:7
**rebuttable** [5] - 9:9, 10:25, 11:3, 11:9, 20:19
**receipt** [1] - 4:1
**RECEIVED** [1] - 2:2
**received** [3] - 4:9, 4:11, 4:13
**recent** [1] - 19:17
**record** [2] - 13:3, 13:9
**refuted** [1] - 9:9
**regard** [2] - 3:25, 10:25
**regarding** [1] - 5:22
**Reinert** [7] - 3:6, 3:16, 4:15, 5:18, 7:18, 15:15, 21:16
**REINERT** [6] - 3:13, 3:17, 4:7, 4:16, 5:20, 21:17
**relating** [1] - 13:2
**relationship** [1] - 12:12
**relatively** [2] - 15:3, 17:19
**release** [22] - 5:8, 6:15, 7:21, 8:1, 8:16, 9:2, 9:12, 9:18, 9:21, 9:23, 10:1, 13:13, 13:15, 13:21, 13:22, 14:22, 15:7, 15:9, 15:10, 15:20, 16:6, 16:7
**released** [10] - 5:3, 5:15, 6:4, 10:12, 12:15, 14:14, 15:1, 15:3, 18:12, 21:9
**relevant** [1] - 20:23
**relieve** [1] - 8:18
**rely** [1] - 3:22
**remain** [5] - 6:18, 8:17, 15:11, 15:15, 15:21
**remaining** [2] - 8:22, 14:18
**remains** [1] - 11:11
**remedy** [1] - 20:14
**reneged** [1] - 18:21
**repeats** [1] - 19:7
**report** [1] - 5:7
**Report** [1] - 12:3
**represented** [2] - 3:5, 3:7
**requested** [1] - 16:11
**require** [3] - 8:16, 15:22, 19:20
**required** [8] - 10:23, 11:19, 11:23, 13:1, 13:11, 13:18, 14:12, 21:8
**reside** [2] - 12:8, 12:17
**resident** [1] - 18:12
**resides** [1] - 12:12
**resources** [2] - 12:1, 19:20
**respect** [2] - 15:25, 17:10
**responsibilities** [1] - 8:13
**restart** [1] - 17:10
**results** [1] - 20:1
**return** [12] - 11:5, 12:15, 14:17, 16:3, 16:9, 16:14, 16:22, 17:1, 17:2, 17:8, 17:9, 18:14
**returned** [2] - 8:10, 18:14
**returning** [1] - 16:5
**returns** [4] - 16:8, 17:22, 20:25, 21:2
**review** [2] - 9:5, 21:13
**reviewed** [1] - 13:24
**rights** [2] - 7:17, 10:8
**risk** [5] - 7:6, 7:12, 9:10, 10:7, 15:4
**Rosenau** [2] - 9:17, 9:20

S

**safety** [1] - 10:23
**scale** [1] - 7:2
**school** [1] - 13:6
**second** [2] - 10:20, 19:18
**Section** [3] - 10:19, 11:4, 11:13
**Security** [4] - 4:21, 4:24, 5:7, 9:11
**see** [1] - 8:9
**senior** [1] - 18:4
**sent** [2] - 18:11, 20:9
**sentiments** [1] - 19:7
**September** [1] - 16:10
**serious** [2] - 9:18, 11:2
**seriously** [1] - 8:14
**seriousness** [1] - 13:19
**service** [2] - 17:22, 17:25
**Services** [5] - 4:21, 4:24, 5:6, 9:11, 12:3
**services** [3] - 5:2, 12:19, 13:5
**set** [2] - 3:8, 11:13
**several** [1] - 19:19
**similar** [1] - 9:17
**similarly** [1] - 8:4
**simply** [3] - 17:20, 19:25, 20:13
**sister** [1] - 12:9
**slim** [1] - 7:7
**snip** [1] - 17:20
**snips** [1] - 17:23
**solely** [2] - 5:5, 6:17
**sort** [2] - 13:14, 17:23
**sought** [1] - 3:19
**specifically** [1] - 4:23
**speculative** [1] - 7:25
**spend** [1] - 17:6
**Spies** [7] - 3:7, 3:18, 4:17, 7:8, 15:21, 21:14, 21:18
**SPIES** [5] - 3:15, 4:3, 4:19, 7:9, 21:19
**stand** [1] - 9:11
**start** [3] - 6:10, 20:14, 20:18
**starts** [2] - 17:4, 20:11
**state** [2] - 5:1, 18:20
**States** [23] - 3:2, 3:5, 6:7, 6:16, 6:17, 6:21, 7:23, 8:2, 8:14, 8:22, 8:25, 9:3, 10:19, 14:19, 15:22, 16:8, 16:14, 16:23, 17:9, 18:13, 18:15, 19:14, 20:13
**status** [3] - 6:16, 6:20, 17:2
**statutory** [1] - 18:25
**stay** [1] - 9:3
**stays** [1] - 6:21
**step** [3] - 10:13, 10:20
**Steve** [1] - 4:23
**stocks** [1] - 12:21
**strike** [1] - 12:23
**submitted** [1] - 3:23
**subsequently** [1] - 15:7
**substances** [1] - 13:8
**substantial** [4] - 17:6, 17:13, 19:20, 20:1
**suggest** [2] - 3:22, 7:5
**sum** [1] - 10:2
**summary** [1] - 20:18
**supervision** [2] - 5:14, 13:25
**Supp** [1] - 7:23
**support** [1] - 5:14
**supports** [1] - 12:20
**Supreme** [3] - 6:2, 16:20, 19:13
**surrendered** [4] - 8:19, 8:23, 16:22, 19:14
**surrendering** [1] - 12:14

T

**term** [1] - 20:22
**terms** [1] - 19:4
**testimony** [2] - 11:20, 14:6
**THE** [12] - 3:1, 3:16, 4:1, 4:6, 4:8, 4:14, 4:17, 5:18, 7:8, 10:11, 21:18, 21:20
**theoretically** [1] - 16:3
**therefore** [5] - 10:18, 11:8, 11:21, 13:9, 21:9
**they've** [1] - 5:2
**thousand** [4] - 7:3, 10:16, 11:7, 20:5
**threatened** [1] - 14:7
**three** [5] - 12:6, 17:14, 19:15, 21:4
**three-and-a-half** [3] - 17:14, 19:15, 21:4
**ties** [6] - 6:14, 6:15, 12:1, 12:2, 14:13, 14:16
**Timbuktu** [1] - 17:24
**Title** [1] - 10:18
**today** [4] - 3:9, 14:6, 20:3, 20:11
**together** [1] - 5:13
**took** [3] - 17:15, 19:10, 21:3
**trading** [1] - 12:21
**trafficking** [1] - 7:2
**travel** [1] - 6:4
**treated** [1] - 12:24
**trial** [10] - 3:8, 3:10, 6:11, 7:1, 9:19, 9:23, 10:12, 15:18, 17:3, 21:10
**tried** [1] - 13:6
**trusted** [1] - 19:4
**truth** [2] - 16:25, 17:4
**truthful** [1] - 19:22
**two** [4] - 10:13, 10:15, 12:6, 19:11



Contact KAYCLARE at 319-362-1518 or kaycr@aol.com to purchase a complete copy of the transcript.

## U

**U.S** [1] - 6:22
**ultimately** [2] - 5:23, 6:2
**under** [4] - 6:7, 10:18, 13:25, 18:10
**undertaking** [3] - 18:21, 18:23, 18:25
**unenforceable** [1] - 6:7
**unique** [1] - 15:23
**United** [23] - 3:2, 3:5, 6:7, 6:16, 6:17, 6:21, 7:23, 8:2, 8:14, 8:22, 8:25, 9:3, 10:19, 14:19, 15:22, 16:8, 16:14, 16:23, 17:9, 18:13, 18:15, 19:14, 20:13
**unless** [1] - 21:1
**unsuccessful** [1] - 19:12
**upstanding** [1] - 14:4
**urge** [1] - 8:8

## V

**versus** [1] - 3:2
**victim** [1] - 11:17
**vigorously** [3] - 5:25, 16:14, 19:9
**Villanueva** [1] - 7:23
**Villanueva-Martinez** [1] - 7:23
**violated** [1] - 9:20
**violence** [2] - 11:16, 14:7
**violent** [1] - 14:5
**voluminous** [1] - 9:6
**voluntarily** [4] - 6:5, 6:6, 8:22, 21:2

## W

**waive** [2] - 6:5, 19:1
**waiver** [2] - 18:19, 18:23
**warrant** [1] - 19:16
**Washington** [2] - 9:16, 9:22
**weeks** [1] - 16:21
**weight** [2] - 11:20, 11:22
**welcome** [1] - 12:17
**Western** [2] - 9:15, 9:16
**whole** [1] - 6:9
**willingness** [1] - 17:7
**wish** [1] - 5:18
**wishes** [1] - 5:8
**writers** [1] - 14:4

## Y

**year** [3] - 16:18, 18:7, 20:21
**years** [11] - 12:4, 12:6, 12:12, 17:14, 19:11, 19:15, 19:19, 20:8, 20:12, 21:4
**yesterday** [2] - 18:8, 19:8

## Z

**Zoss** [1] - 7:22
**Zoss'** [1] - 8:2



Contact KAY CARR at 319-362-1548 or kaycarr@q.com to purchase a complete copy of the transcript.